James L. ARNOLD, et al., Tim Loggins, et al., Dennis Stoneman, et al., Plaintiffs,

v.

STATE OF ARKANSAS, et al., Defendants.

Nos. LR–C–94–177, LR–C–93–884 and PB–C–94–99.

United States District Court, E.D. Arkansas, Western Division.

Dec. 11, 1995.

Mark L. Martin, David Brent Sterling, Martin, Trumbo & Sterling, Fayetteville, AR, George Chaddwick Mason, Stutte & Mason, P.L.C., Fayetteville, AR, Katharine Cox Day, Monticello, AR, Bernard Kenneth Johnson, Dumas, AR, and Stephen E. Fisher, Fisher Law Firm, Little Rock, AR, for plaintiffs.

Sarah Lewis James, William Fred Knight, Attorney General's Office, Little Rock, AR, for defendants.

## MEMORANDUM OPINION AND ORDER

EISELE, District Judge.

Before the Court are Plaintiffs Arnold and Stoneman's Motions for Leave to Amend Complaint and all parties' Cross–Motions for Partial Summary Judgment (which the Court will address later in this Order).

### I. Motions for Leave to Amend Complaints

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The disposition of a motion to amend is within the sound discretion of the court. *See Foman v. Davis*, 371

U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Sprynczynatyk v. General Motors Corp.*, 771 F.2d 1112, 1125 (8th Cir. 1985). This action is unusual in two ways: first, it is one of three consolidated cases [1]— with the plaintiffs asserting the same or similar claims; second, each plaintiff represented in this action had to affirmatively opt-in to the action pursuant to 29 U.S.C. § 216(b).[2] These factors suggest caution in dealing with plaintiffs' motion.

The State argues that because the plaintiffs "opted-in" pursuant to 29 U.S.C. § 216(b) they cannot be deemed to have consented to the claims that would be added if the leave to amend was granted. The claim alleged in the original complaints was whether the plaintiffs had been denied monetary compensation for hours worked between 80 and 86 in a fourteen day work period.

The Stoneman Plaintiffs filed their original Complaint on December 15, 1993 while the Arnold Plaintiffs filed their original Complaint on March 31, 1994. Both cases were consolidated with the Loggins case on April 21, 1994, because they all alleged that the State, specifically, the Department of Corrections, had violated the Fair Labor Standards Act (29 U.S.C. § 207 *et seq.*) ("FLSA"). The case was removed from the trial calendar on June 22, 1995, pending the resolution of the plaintiffs' and defendants' motion for partial summary judgment. However, before it was removed the discovery deadline was May 5, 1995. On October 27, 1995, the plaintiffs filed their motions to amend. The Stoneman Plaintiffs' motion to amend purports to add six "additional violations of the FLSA." The Arnold Plaintiffs seek to add one additional claim: failure of the defendants to compensate the plaintiffs for 15 minutes of work performed each day as a result of the defendant's requirement that plaintiffs participate in "shift report." The State is resisting the motion to amend and argues that it will be prejudiced if the motion is granted.

The motions to amend followed the November 6, 1995, hearing on the parties' cross

---

1. Early on in this action, the plaintiffs sought to have the cases certified as class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Court denied plaintiffs' request, determining that 29 U.S.C. § 216(b) controlled.

2. The statute provides in relevant part "No employee shall be party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

motions for partial summary judgment. The State had moved for summary judgment on the claims for additional "straight-time" compensation for the hours worked between 80 and 86. The State argued that there was no jurisdiction under the FLSA for those claims. The Court divided the plaintiffs' claims into two groups for jurisdictional purposes: (1) those plaintiffs who sought additional "straight-time" compensation for the 80 to 86 hours; and (2) those who sought "straight-time" compensation for the 80 to 86 hours *and* for having to report 15 minutes early[3] and/or for lunch periods.[4] The Court determined that the plaintiffs that were simply seeking "straight-time" compensation for the 80 to 86 hour period[5] did not have a claim under FLSA. Therefore, the Court did not have jurisdiction over those claims. The Court then allowed the parties an opportunity to respond to the Court's initial ruling.[6] At that time, the Stoneman Plaintiffs advanced "newly discovered evidence" such as a document which allegedly indicated that the plaintiffs may or may not have been designated as 207(k) exempt and a voice recording of a warden allegedly indicating that employees are required to report to work 15 minutes early. They also asserted several new claims.[7] The new claims and new evidence were not, prior to the hearing, brought to the attention of the Court or to the attention of the State. Therefore, the Court denied the cross-motions for summary judgment pending the plaintiffs' motions for leave to amend their complaints.

The Stoneman Plaintiffs assert that during discovery, additional violations of the FLSA became known. Those alleged violations are as follows: (1) failure to pay the plaintiffs for 30 minutes of work performed each day as pre-shift and post-shift work; (2) failure to keep accurate and complete records of the hours worked by the plaintiffs; (3) failure to pay the plaintiffs for thirty minutes of a purported lunch break each day; (4) requiring the plaintiffs to use compensatory time prior to reaching the 480 hour threshold at which cash must be paid; (5) not allowing plaintiffs to use compensatory time when they choose; (6) failure to designate the plaintiffs as 207(k) exempt employees with a fourteen day work period.

■ The Court will review each of the "additional violations" that the Stoneman and Arnold Plaintiffs seek to add to their complaints. Addressing the first claim,[8] the Court notes that this claim was asserted by the Loggins Plaintiffs in their original complaint.[9] Therefore, the State will not be unfairly prejudiced in defending against this claim since it has already been raised. This is the only claim that the Arnold Plaintiffs seek to add to their complaint.[10] The Stoneman and Arnold Plaintiffs will be permitted to amend their complaints to add this claim.

■ The second claim is the alleged "failure to keep accurate and complete records of the hours worked by the plaintiffs." The Stoneman Plaintiffs did not raise this claim prior to filing their motion for partial summary judgment, nor in their response to

---

3. The Loggins Plaintiffs (the "Field Riders") were the only group of plaintiffs who sought compensation for the 15 minutes of pre-shift activities. Counsel for the Loggins Plaintiffs stated that there were approximately 19 plaintiffs in this group.

4. The Stoneman and Loggins Plaintiffs contended that the State violated the FLSA by not compensating them for the "lunch period." *See* Docket No. 35 (Loggins), ¶ 6; Docket No. 1 (Stoneman), ¶ 6.

5. In other words, those plaintiffs that did not have additional claims for uncompensated work time (lunch periods or pre-shift work).

6. The Court did not make a final determination on this issue in light of the developments that occurred during the course of the hearing.

7. The new claims alleged in the hearing track those alleged in the Stoneman Plaintiffs' motion to amend.

8. Failure to pay the plaintiffs for 30 minutes of work performed each day as pre-shift and post shift.

9. Loggins contended that he was required to report to work each morning, fifteen minutes early. *See* Loggins Complaint, ¶ 7.

10. The Arnold Plaintiffs claim that they were not payed for the 15 minutes of work performed each day while participating in "shift report."

defendants' motion for partial summary judgment. It is too late in the litigation to now allege that the records kept by the State are kept in violation of the FLSA. Further, the Stoneman Plaintiffs have not asserted that the allegedly inaccurate and incomplete record keeping practices are continuing. Thus, there is no indication that either declaratory or injunctive relief would be appropriate as to this particular issue. The Court notes that an amendment to the complaint is not needed if the Stoneman Plaintiffs are simply seeking to utilize the alleged record keeping violations in order to shift the burden of proof on the overtime compensation issue to the State.[11]

■ Since it is arguable that third claim (lunch breaks) has already been asserted[12] the Stoneman Plaintiffs will be permitted to amend their complaint to specifically assert this claim.

■ The fourth and fifth claims challenge the State's requirement that plaintiffs use their compensatory time prior to reaching the 480 hour threshold and the State's alleged failure to allow the plaintiffs to use compensatory time when they chose. These claims are distinct from the § 207(k) claim because they arise under § 207(o). Moreover, the authority relied upon by the Stoneman Plaintiffs was a case decided December 21, 1994[13]—nearly a year after the plaintiffs filed their complaint. In fact, in the Hearing of October 13, 1995, counsel for the Stoneman Plaintiffs identified statements made by Mike Dillard in his deposition as a basis of evidentiary support for this claim. Mr. Dillard's deposition was taken on January 30, 1995. Plaintiffs filed their motion for partial summary judgment on June 12, 1995—nearly six months after deposing Mr. Dillard. If plaintiffs felt there was a claim for being forced to take overtime compensation, they should have sought leave to amend their complaint to assert this claim well before October 27, 1995.[14] Therefore, the Court will not allow plaintiffs to amend their complaint to add this claim. This claim is untimely and will prejudice defendants if added at this stage in the litigation.

■ The sixth additional claim alleges the State's failure to designate the plaintiffs as 207(k) exempt employees with a fourteen day work period. Plaintiffs have already conceded that they are salaried employees and are employed pursuant to and in accordance with 29 U.S.C. § 207(k).[15] Plaintiffs cannot now assert the contrary. Therefore, the Stoneman Plaintiffs may not amend their complaint to add this additional claim.

## II. Cross–Motions for Partial Summary Judgment

The Court noted in its Hearing on Motions For Partial Summary Judgment[16] that it was prepared to pass on the issues raised by those motions. The Court eventually refrained from doing so[17] due pending the motion to amend and response thereto. The Court will now revisit the cross-motions for

---

11. An employer's failure to maintain records under the FLSA shifts the burden to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the plaintiff's evidence. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–688, 66 S.Ct. 1187, 1192–1193, 90 L.Ed. 1515 (1946).

12. *See*, Docket No. 1 (Stoneman), ¶ 6 ("security officers who work at the Arkansas Department of Corrections are scheduled to work 8½ hours per day [and] ... they are not given any uninterrupted breaks.")

13. *See Heaton v. Moore*, 43 F.3d 1176 (8th Cir. 1994).

14. The date the motion for leave to amend the complaint was filed.

15. *See* Docket No. 42, Statement of Undisputed Facts, ¶¶ 4 and 5. *See also* Docket No. 46, State-

ment of Material Facts in Dispute by Plaintiff In Response (does not dispute the § 207(k) statement). According to Local Rule C–10 "all material facts set forth in the statement filed by the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party ..." Indeed, in plaintiffs' own Statement of Undisputed Material Fact, Docket No. 35, ¶ 7 the plaintiff indicates "The plaintiffs are employed based upon a fourteen day work period pursuant to and in accordance with 29 U.S.C. § 207(k)."

16. October 13, 1995.

17. *See* Court's Order, November 8, 1995, *nunc pro tunc*, October 13, 1995 (denying cross-motions for partial summary judgment), Docket No. 56 (Stoneman), Docket No. 44 (Arnold), Docket No. 41 (Loggins).

partial summary judgment and rule on those motions.[18] This Court issued an Order [19] on June 22, 1995 directing the plaintiffs to respond to the Defendants' Motion for Partial Summary Judgment and to file a supplemental motion for summary judgment on the "field riders" issue.[20]

 Plaintiffs are past or present correctional (security) officers who were, during the relevant time period, employed by the Arkansas Department of Corrections ("Department"), a governmental entity of the State of Arkansas. They were employed based upon a fourteen day work period pursuant to and in accordance with 29 U.S.C. § 207(k).[21] The plaintiffs are generally scheduled to work up to 85.75 hours per work period and are paid a salary [22] established by Arkansas Code Annotated § 21–5–209.[23] The Court accepts as undisputed that the Department is entitled to the § 207(k) exemption as provided in the Fair Labor Standards Act [24] ("FLSA") with respect to overtime compensation. Therefore, each plaintiff is not entitled to overtime compensation unless he or she works in excess of 86 hours during any particular fourteen day period.[25] The parties agree that the plaintiffs are compensated, and have been compensated, for overtime for all hours worked over 86.[26] They also agree that, since January 1994, plaintiffs have received "straight time" compensation for all hours worked between 80 and 86.[27] The plaintiffs do not receive monetary compensation for this compensatory time while their employment continues. However, any such properly accrued compensatory time will be paid for in cash upon termination or resignation.[28]

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

---

**18.** Docket Nos. 20 and 23 (Loggins); Docket Nos. 18 and 23 (Arnold); Docket Nos. 33 and 36 (Stoneman).

**19.** Docket No. 31 (Arnold); Docket No. 30 (Loggins); Docket No. 43 (Stoneman).

**20.** Defendant Loggins was the only defendant to directly respond to the field riders issue. *See* Docket No. 36 (Loggins), Docket No. 44 (Stoneman), Docket No. 33 (Arnold).

**21.** Plaintiff (Loggins) contends that "plaintiffs' employment consists of non-supervisory work and they are not exempt from coverage under the FLSA." The application of the section 207(k) exception does not turn on supervisory status. Plaintiff appears to be referring to the section 213 exception. Section 213 provides that the provisions of section 207 do not apply to executives or administrators. Under this provision, an agency is not required to pay overtime compensation to employees regardless of the number of hours they work. *See* 29 U.S.C. § 213(a); *see also* Docket No. 20, para. 3; *but see* Docket No. 22 (Loggins), p. 5 ("The Plaintiffs are employed pursuant to a 14 day work period in compliance with 29 U.S.C. § 207(k). Accordingly, the Plaintiffs are entitled to overtime compensation (compensatory time off) for all hours worked in excess of 86 per work period.")

**22.** The plaintiffs are clearly salaried employees. Despite the fact that the plaintiffs have conceded this fact in their Statement(s) of Undisputed Facts (Docket No. 21 (Loggins), Docket No. 20 (Arnold), Docket No. 35 (Stoneman) at para. 6), Plaintiffs Stoneman and Loggins attempt to ar-

gue that they are not salaried employees (Docket 31 (Loggins) and Docket 45 (Stoneman)). Their evidence in support of this argument consists of the affidavits of several of the plaintiffs, a time keeping training exercise, and the State's Schedule 4800 which lists an hourly wage and, incidently, an annual rate. This evidence is insufficient to challenge the Defendant's assertion that the plaintiffs are salaried employees, especially in light of the fact that all plaintiffs have admitted that they are salaried employees.

**23.** *See* Defendant's Motion for Partial Summary Judgment, Docket 23 para. 1 (Loggins) & Plaintiffs Brief In Support of Motion for Partial Summary Judgment, Docket No. 22, p. 1 (Loggins).

**24.** 29 U.S.C. § 201 et seq. (West 1978).

**25.** *See* Statement of Undisputed Facts (Loggins), Docket No. 21, para. 7 and Statement of Undisputed Facts (Defendant), Docket No. 24, para. 5.

**26.** *See* Statement of Undisputed Facts: Docket No. 20 (Arnold), Docket No. 35 (Stoneman), Docket No. 21 (Loggins). This compensation is in the form of "compensatory time" which is one and one half hours of banked time credited to an employee for each hour of overtime worked.

**27.** *See* Statement of Undisputed Facts: Docket No. 20 (Arnold), Docket No. 35 (Stoneman), Docket No. 21 (Loggins).

**28.** *See* Statement of Undisputed Facts: Docket No. 20 (Arnold), Docket No. 35 (Stoneman), Docket No. 21 (Loggins).

may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." In *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the Court stated that "the motions may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 885, 110 S.Ct. at 3187 (quoting *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

The moving party bears the burden of establishing that no genuine dispute of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–325, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). In ruling on the moving party's motion, the Court is required to review the evidence in the light most favorable to the nonmoving party. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987).

### FAIR LABOR STANDARDS ACT 29 U.S.C. § 207

The Fair Labor Standards Act, passed by Congress in 1938, is a comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked. The FLSA prohibits employers from employing any worker for a work week longer than forty hours unless the employee receives compensation for his employment in excess of forty hours. 29 U.S.C. § 207(a)(1) (West Supp.1995). Such compensation must be at a rate not less than one and one-half times the regular rate at which the employee is employed. *Id.* The FLSA became applicable to state and local governments in April of 1986.

 The two central themes of the FLSA are its minimum wage and overtime requirements. The principal provision compelling the payment of an overtime wage for hours worked above a maximum hour threshold is section 207(a).[29] But section 207(k) of the FLSA exempts public agencies with respect to the employment of any employee in law enforcement activities [30] from the provisions of section 207(a) under two circumstances:

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate of not less than one and one half time the regular rate at which he is employed.

29 U.S.C. § 207(k) (the "section 207(k) exception"). Pursuant to these statutory provisions, the Secretary of Labor has, by published regulations, established that 171 hours is the maximum number of hours a law enforcement officer may work in a period of 28 days before the officer must be paid an overtime wage. *See* 29 C.F.R. § 553.230. The number of hours at the regular and overtime wage rates for periods of fewer than 28 days would be calculated applying the same proportion as explained in 29 C.F.R. § 553.230. *See Lee v. Coahoma County*, 937 F.2d 220, 224 (5th Cir.1991). Public agencies may choose to invoke the section 207(k) exception and require security personnel in correctional institutions to work forty-three hours a

---

**29.** "[N]o employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation ... at a rate of not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

**30.** Including security personnel in correctional institutions. 29 U.S.C. § 207(k).

week without being required to pay these employees overtime.[31]

## ISSUES FOR PARTIAL SUMMARY JUDGMENT

 As outlined above, the purpose of the FLSA was to set limits on minimum wages and the number of hours an employee could work before the employer is required to pay overtime. Here, there is no dispute that the plaintiffs' salary is above the minimum wage and that they are appropriately compensated for all overtime hours worked in accordance with the FLSA. Instead, Plaintiffs contend that they were required to work up to 85.75 hours per fourteen day period but were only compensated for 80 hours and that they are entitled to pay at their "regular rate" for those hours worked between 80 and 86.[32] Plaintiffs argue that Federal Regulations mandate that all extra compensation for excess hours of overtime work cannot be "said to have been paid to an employee unless all the straight time compensation due him for the non-overtime hours under his contract (express or implied) or under any applicable statute has been paid." 29 Code Fed.Reg. § 778.315. Plaintiffs contend that the Defendants have failed to compensate them for "all the straight time compensation due" and that this violates section 778.315. Plaintiffs argue that "in order to comply with the overtime requirements of the FLSA (§ 207), an employer must pay, at the regular rate, for all non-overtime hours worked in a period in which the employee also worked overtime." *Schmitt v. State of Kansas,* 864 F.Supp. 1051 (D.Kan.1994),[33] *see also Reich v. Midwest Body Corporation,* 843

F.Supp. 1249, 1251–1252 (N.D.Ill.1994) (providing that overtime pay, as required by FLSA, has not been paid unless both straight time pay and overtime pay have been fully paid and have been paid based on an employee's regular pay).

 The fact that plaintiffs brought this "straight time" claim in federal court under the FLSA is unusual. However, there is some precedent for their claim. *See Schmitt v. State of Kansas,* 864 F.Supp. 1051 (D.Kan.1994). In *Schmitt,* as here, the plaintiffs' unpaid straight time claim had two distinct parts: (1) a claim for unpaid straight time for periods in which plaintiffs also worked overtime (Claim 1); and (2) a claim for unpaid straight time for periods in which plaintiffs worked no overtime (Claim 2).[34] *Id.* at 1060. Interestingly, the relief afforded an employee aggrieved by a violation of section 206 or section 207 is limited to "their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Moreover, section 215 lists "prohibited acts" as being a violation of sections 206,[35] 207,[36] 212,[37] 211(c),[38] or regulations issued under section 214.[39] This Court notes that a violation of 29 C.F.R. § 778.315 is not included, or referred to, in this statutory provision. So this Court, at the outset, expresses its doubts about its jurisdiction over both of the plaintiffs' claims under the FLSA. The Court even has some doubt about the authority of the Secretary, by regulation, to extend federal court jurisdiction beyond that clearly created by the statute. However, the question is obviously

---

**31.** Agencies have the option of requiring 86 hours every two weeks or 171 hours every twenty-eight days. *See Lamon v. City of Shawnee,* 972 F.2d 1145, 1150 (10th Cir.1992); *Birdwell v. City of Gadsden,* 970 F.2d 802, 805 (11th Cir.1992); *Nixon v. City of Junction City,* 707 F.Supp. 473, 479 (D.Kan.1988).

**32.** The plaintiffs' claim encompasses two legally distinct claims: (1) periods in which overtime was worked (Claim 1); and (2) periods in which overtime was not worked (Claim 2).

**33.** *See* Docket No. 19 (Arnold), p. 7.

**34.** In this action, none of the plaintiffs have identified any specific pay periods where overtime was worked (Claim 1).

**35.** Section 206 is the "minimum wage" provision.

**36.** Section 207 is the "maximum hours" provision. Here both parties agree that all hours worked over eighty-six are being compensated in accordance with the FLSA.

**37.** Section 212 is the "child labor" provision.

**38.** Section 211(c) pertains to record keeping requirements.

**39.** Regulations regarding the employment of apprentices and those whose earning capacity is impaired by age, physical deficiency, etc.

much closer with respect to plaintiffs' Claim 1 than Claim 2 since it can be contended that a Court, in dealing with an overtime claim (clearly covered by the FLSA) would need the authority to assure itself that the non-overtime work for the same pay period was fully compensated. But here, there is no claim for overtime.[40] So the Court concludes that it has no jurisdiction over the general claims here for straight time compensation for the hours worked between 80 and 86 (Claim 2). The alternative, of course, is to leave these contractual disputes to resolution in our state courts. However, the Court concludes that the plaintiffs' claim for straight time pay for work periods when no overtime was worked (Claim 2) is not a violation of section 207 of the FLSA. Therefore, defendants' motion for partial summary judgment as to Claim 2 will be GRANTED.

For the present, pending further findings or argument, the Court will assume it has jurisdiction over the plaintiffs' Claim 1. If the Plaintiffs' argument (as to Claim 1) is legally viable at all, then the issue is whether all the straight time compensation due to the Plaintiffs *under their contract* for the non-overtime hours worked has been paid. Under this theory, before it can be determined whether the FLSA was violated, the terms of the employment agreement between the Department and the Plaintiffs must be known.

### Terms of the Work Agreement

Plaintiffs claim with respect to Claim 1, that they contracted to work for an hourly wage (not a salary) and that they did not agree to work for up to 86 hours in two weeks for a statutory salary.[41] Defendants

contend that the Plaintiffs were informed and agreed, prior to beginning employment with the Department, that they would be paid on a salary basis for the reoccurring 85.75 hour 14 day work periods at the annual statutory salary as quoted.[42] Defendants assert that Plaintiffs were informed of their yearly salary, 86 hour work period, and 12.25 hour work days as a condition to acceptance of employment[43] and that "plaintiffs are employed based on a fourteen day work period pursuant to and in accordance with 29 U.S.C. § 207(k)."[44]

Plaintiffs have filed affidavits in which several of the plaintiffs attest "at no time was I told that I was a salaried employee ... I was never told by anyone that I would not be paid for the hours worked between 80 and 86."[45] Plaintiffs argue that the fact that the Department, in January of 1994, began recognizing the hours worked between 80 and 86 by awarding "straight time" demonstrates that the Department knew it was not compensating plaintiffs for those hours.[46] Defendants offer the affidavit of Bill Lowe to support their contention that the plaintiffs agreed to work up to 86 hours for the statutory salary.[47]

It occurs to the Court that the decision by the State's Department of Finance and Administration, for convenience, to determine hourly rates on a uniform basis (i.e., by electing to base its calculations on the standard 40 hour week) for all state employees, whether they are paid on an hourly basis or on a salary basis, and whether they were subject to a section 207(k) exemption or not, did not in anyway affect the basic terms of the employ-

---

**40.** *See* Plaintiffs' Brief in Support of Motion for Partial Summary Judgment, p. 3, Docket No. 34 (Stoneman) ("[P]laintiffs receive compensatory time for all hours worked in excess of 86 hours per work period."); Plaintiffs' Brief in Support of Motion for Partial Summary Judgment, p. 3, Docket No. 19 (Arnold) ("[P]laintiffs receive compensatory time for all hours worked in excess of 86 hours per work period."); Plaintiffs' Brief in Support of Motion for Partial Summary Judgment, p. 2, Docket No. 22 (Loggins) ("[P]laintiffs receive compensatory time for all hours worked in excess of 86 hours per work period.").

**41.** *See* Docket No. 33 (Arnold), p. 5.

**42.** Docket No. 28 (Loggins), p. 3.

**43.** *See* Docket No. 23, Exhibit B, para. 11 (Affidavit of Bill Lowe).

**44.** Docket No. 24, para. 5. Plaintiffs concede that the Department of Correction employees are employed based upon a fourteen day work period. *See* Docket No. 21 (Loggins).

**45.** Docket No. 33 (Loggins), Exhibit 3. Defendants would state that no one told Plaintiffs that they would not be paid for the hours worked between 80 and 86 because plaintiffs were paid, in fact, for such hours under their contracts of employment.

**46.** Docket No. 33 (Loggins), p. 4.

**47.** Docket 23 (Loggins), para. 11.

ment contract which the plaintiffs here have with the Arkansas Department of Corrections. That determination did result in a change in the manner by which plaintiffs' "compensation time" was calculated and, on balance,[48] was beneficial to the plaintiffs because it results in their getting, for the first time, compensatory credit[49] for the hours they worked in excess of 40 hours per week which ordinarily would amount to 2.87 hours. In effect, the decision to award "straight time" created an additional benefit for the plaintiffs. It did not diminish their actual hourly rate. The Court fails to see how the December, 1993, change (effective January, 1994) can form the basis for an argument that, prior to 1994, plaintiffs were not compensated for the hours 80 to 86 worked in any two week period. Nor does the Court see how that change can form the basis for any argument that plaintiffs were not compensated for such hours (80 to 86) after the beginning of 1994.

The Court doubts that there is any genuine issue of fact about the agreed terms and conditions of plaintiffs' contract of employment. Nevertheless, the present submissions are perhaps not as complete as they should be. If the parties have any additional evidence to support their argument (e.g. postings and advertisements, employee handbooks, any writings reflecting the work agreement, affidavits of training officers who informed the plaintiffs of the terms of the employment, written work agreements, or additional affidavits) they should, by January 5, 1996, file same with this Court. The Court further directs the defendants to submit evidence regarding the date on which the 86 hour work period was first adopted by the

Department. Absent such evidence there may be a genuine issue of material fact as to the terms[50] of the employment agreement between the Department and the Plaintiffs. Therefore, the Court will delay its decision on this issue at this time. Further, this Court directs both parties to further brief the Court on their interpretations of section 207. Specifically, if the Defendants are found to have not compensated the Plaintiffs for the six hours[51] as alleged, would such a failure constitute a violation of FLSA or merely a violation of the employment contract?

### Calculation of "Regular Rate"

■ As stated, Plaintiffs argue that to make fully effective any award or payment of overtime compensation under the FLSA, it must first be established that the worker has been compensated, at their "regular rate," for all non-overtime hours worked. Plaintiffs assert that their "regular rate" of compensation is derived by dividing their statutory salary by 2080 hours.[52] The Defendant maintains that the State of Arkansas provides payroll support services through its office of Personnel Management, Payroll Section, with a mechanized payroll system which provides computer generated pay vouchers[53] and that the Department of Finance and Administration has elected to reduce all pay calculations to a standard forty hour week for administrative convenience.[54] Thus, Defendant argues the "regular rate" of compensation is not the salary divided by a 40 hour work week, but instead the salary divided by a forty-three hour work week.

■ Under the FLSA it, of course, cannot be left to a declaration by the parties as

---

**48.** The Court recognizes that this determination could have a slightly negative effect in the case where a plaintiff was being penalized for, say, unauthorized absence since the two weeks statutory salary divided by 80 would result in a per-hour change in excess of what it would be if that salary was divided by 86.

**49.** This compensatory credit is known as "straight time".

**50.** Specifically, the number of hours to be worked per pay period in order to receive the statutory salary.

**51.** The briefs should only address Claim 1 (the six hours when overtime was in fact awarded in

a particular work period). Of course, the factual basis for the two claims is the same even though relief under the FLSA may not be given to those plaintiffs who have had no overtime. Further relief under Claim 1 can only be given for those pay periods for which overtime was paid.

**52.** 2080 hours reflects a 40 hour work week multiplied by 52 work weeks in a year. *See* Docket No. 22, Exhibit 2, p. 12–13 (Deposition of Bill Lowe).

**53.** *See* Brief in Support of Defendant's Motion for Summary Judgment, Docket No. 25, p. 5.

**54.** Docket No. 23 (Loggins), Exhibit B, para. 13 (Affidavit of Bill Lowe).

to what is to be treated as the "regular rate" for an employee. Rather it must be determined from the employment agreement and from what actually happens under that agreement. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464, 68 S.Ct. 1186, 1196, 92 L.Ed. 1502 (1948). The Supreme Court has described it as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed. *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S.Ct. 1242, 1244, 89 L.Ed. 1705 (1945). The parties have stipulated that the normal, non-overtime workweek for the plaintiffs is 85.75 hours per fourteen day period. Therefore, the determination of a particular plaintiffs "regular rate" will be his or her statutory salary divided by a forty-three hour work week. *Bay Ridge*, 334 U.S. at 464, 68 S.Ct. at 1196 (finding regular rate of pay by dividing the weekly compensation by the hours worked).

The Court notes that if plaintiffs were caused to use leave and compensation time at a rate calculated upon a forty hour work week then the discrepancy between the calculation based upon a forty-three hour work week and a forty hour work week might possibly form the basis for a cause of action in state court. However, this Court is without jurisdiction over such a claim.

### STATUTE OF LIMITATIONS

■ Defendants argue for a two year statute of limitations [55] while Plaintiffs argue for a three year statute of limitations. Ordinarily, the statute of limitations on an action under the FLSA for unpaid minimum wages, unpaid overtime compensation or liquidated

damages is two years, pursuant to 29 U.S.C. § 255(a). The statute of limitations does not pertain to the scope of the action (i.e. liability for unpaid wages) but to whether the action may be brought at all. *Professional Firefighters Ass'n of Clayton v. Clayton*, 759 F.Supp 1408, 1413 (E.D.Mo.1991). Under 29 U.S.C § 216(b) any employer who violates the provisions of section 206 or section 207 shall be liable to the employees affected for their unpaid minimum wages, or their unpaid overtime compensation, and potentially an additional equal amount as liquidated damages.[56]

■ A finding by the Court that a FLSA violation was wilful would expand the statute of limitations to three years. In this action, whether the statute of limitations is two years or three years is irrelevant because all plaintiffs filed their actions within two years of the alleged violation.[57] Moreover, the failure of an employer to pay minimum wages or overtime in accordance with the FLSA constitutes a continuing violation, so that a new cause of action accrues with each paycheck. 29 U.S.C. § 207; *see also Hendrix v. City of Yazoo City, Miss.*, 744 F.Supp 1412 (S.D.Miss.1989). Therefore, the statute of limitations did not toll in the compensation for hours worked in connection with the 80 to 86 issue until January 1994,[58] until February 1995 for the "field riders" issue,[59] and has yet to toll with respect to the lunch period issue because the alleged violation is ongoing.[60] Therefore, this defense is DISMISSED AS MOOT.

### FIELD RIDERS [61]

Loggins Plaintiffs contend that up until February 1995, the Department required

---

**55.** Defendant's Motion for Partial Summary Judgment, Docket No. 23 (Loggins), para. 2.

**56.** The Court notes that Plaintiffs have not alleged unpaid minimum wages or unpaid overtime compensation. Thus, there exists a question as to what penalty provision, if any, would apply to the alleged misconduct of defendants. *See* discussion supra.

**57.** Loggins Plaintiffs filed March 3, 1994; Arnold Plaintiffs filed March 31, 1994; Stoneman Plaintiffs filed March 31, 1994.

**58.** *See* Docket No. 22 (Loggins), p. 7 and Docket No. 34 (Stoneman), p. 2.

**59.** *See* Docket No. 36 (Loggins), p. 9.

**60.** *See* Docket No. 36 (Loggins), p. 11.

**61.** The other plaintiffs also have similar claims in this regard. The Arnold Plaintiffs claim fifteen minutes of uncompensated time as a result of shift report. *See* Motion for Leave to Amend Complaint. ¶ 3. The Stoneman Plaintiffs contend that they worked before and after their regular shift for a total of 30 minutes a day without compensation. *See* Motion for Leave to Amend Complaint, ¶ 4. However, because these claims are just now being asserted they were not the subject of this motion for partial summary judgment.

field riders to report to work each morning, without compensation, fifteen minutes early for briefings, to draw weapons, and inspect horses.[62] Plaintiffs argue that such a requirement was in violation of the FLSA. The Interpretive Bulletin excerpts supplied by the Plaintiffs merely address the changing of clothes and involuntary attendance.[63] Federal Regulations provide that compensable hours of work includes pre-shift activities "which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses." 29 C.F.R. § 553.221(b). Loggins Plaintiffs may file [64] supplemental factual submissions, by January 5, 1996, describing why they believe the pre-shift activities of the field riders are an "integral part of the employee's principal activity or closely related to the performance of the principal activity." Should the Loggins Plaintiffs fail to file a supplemental motion within the time provided, their motion for summary judgment on the field riders issue will be denied.

## LUNCH BREAKS

Stoneman and Loggins Plaintiffs contend that the Defendant violated the FLSA by not compensating them for the "lunch period." [65] Plaintiffs claim that they are "on call" during this period and are often required to break up fights or deliver inmates.[66]

■■■■■■ Code of Federal Regulations, Title 29, Section 553.233(b) governs the compensability of meal periods. The Code pro-

vides that a § 207(k) employer may, in the case of law enforcement personnel, exclude meal time from hours worked on tours of duty of 24 hours or less, provided that the employee is completely relieved from duty during the bona fide meal period. Section 553.223(b) by reference to 29 C.F.R. § 785.19, mandates that uncompensated meal periods "must be scheduled, occur at a regular time, and normally be thirty minutes or more." *Lee v. Coahoma County,* 937 F.2d 220, 225 (5th Cir.1991) (citing § 785.19 in discussing § 553.223). "A police officer must primarily be engaged in work-related duties during meal periods to warrant compensation therefor." *Lamon v. City of Shawnee, Kan.,* 972 F.2d 1145, 1157 (10th Cir.1992). That an officer is on-call and has some limited responsibilities during meal periods does not alone mean the officer is working. *Id.* An officer is entitled to compensation for meal periods if the officer's time or attention is taken up principally by official responsibilities. *Id.* at 1158. The Stoneman and Loggins Plaintiffs may file [67] supplemental factual submissions, by January 5, 1996, describing specific times and circumstances when the identified employees time was spent predominately for the benefit of the employer during their meal periods.[68] Should Plaintiffs fail to file such supplemental submissions within the time provided, the motion for summary judgment on the lunch breaks issue will be denied.[69]

## LIQUIDATED DAMAGES

Defendants argue that liquidated damages are inappropriate as a matter of law because

---

**62.** Docket No. 35 (Loggins), para 5. Plaintiffs Arnold and Stoneman have not raised the "field riders" issue. *See* Complaint, Docket No. 1 (Stoneman), Amended Complaint, Docket No. 7 (Stoneman), and Complaint, Docket No. 1 (Arnold).

**63.** Docket 36 (Loggins), p. 9, Exhibit 8.

**64.** The defendants are asked to respond to these supplemental submissions.

**65.** Docket No. 35 (Loggins), para 6; Docket No. 1 (Stoneman), para. 6 ("Security officers who work at the Arkansas Department of Corrections are scheduled to work 8½ hours per day [and]

... they are not given any uninterrupted breaks.").

**66.** Docket 35 (Loggins), Exhibit 5 (affidavits of plaintiffs).

**67.** The defendants are asked to respond to these supplemental submissions.

**68.** *See Hill v. United States,* 751 F.2d 810, 813–814 (6th Cir.1984) (applying predominate benefit test to meal periods of letter carrier under § 785.19).

**69.** Defendants did not move for partial summary judgment on this issue. *See* Defendants' Motion for Partial Summary Judgment, Docket No. 23 (Loggins).

the Defendant has demonstrated that a violation of the FLSA, if present, was in good faith and objectively reasonable.[70] The Department has filed affidavits and internal memoranda to support its argument that the Department was aware of, and made a good faith attempt to comply with, the FLSA.[71]

Plaintiffs contend that alleged violations were not in good faith because Bill Lowe was informed by Pete Gregan, executive director of a labor union, that the Department was in violation of the FLSA because security officers were not being compensated for hours worked between 80 and 86.[72] Plaintiffs contend that Bill Lowe's inaction in response to this information constitutes reckless disregard by omission.

It appears to the Court, on the basis of submissions of the parties to date, that it is very unlikely that the plaintiffs can establish a basis for the award of liquidated damages in this case. However, the defendants' submissions do not fully address the "eighty to eighty-six" compensation allegation, the "field riders" issue, or the lunch period issue. Therefore, the Court concludes that the present record is insufficient for the Court to determine whether the Department's actions were in "good faith" and "objectively reasonable." *Hultgren v. County of Lancaster, Neb.,* 913 F.2d 498 (8th Cir.1990). Therefore, the Court will, at this time, DENY Defendants' motion for judgment, as a matter of law, on this issue. The Court can, of course, reconsider this issue after the parties submit additional evidence to support their positions.

IT IS THEREFORE ORDERED that the Stoneman Plaintiffs' Motion for Leave to Amend Their Complaint[73] be, and it is hereby, GRANTED IN PART and DENIED IN PART as provided by this Order.

IT IS FURTHER ORDERED that the Arnold Plaintiff's Motion for Leave to Amend Their Complaint[74] be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment[75] be, and it is hereby, GRANTED IN PART and DENIED IN PART as provided by this Order.

IT IS FURTHER ORDERED that Plaintiff Loggins' Motion for Partial Summary Judgment[76] on the Field Riders Issue be, and it is hereby, HELD IN ABEYANCE as provided by this Order.

IT IS FURTHER ORDERED that Plaintiff Loggins' Motion for Partial Summary Judgment[77] regarding the Lunch Break Issue be, and it is hereby, HELD IN ABEYANCE as provided by this Order.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment[78] Finding Liquidated Damages to be Inappropriate as a Matter of Law be, and it is hereby, DENIED.

The parties are directed to submit all filings as required by this Order no later than January 5, 1996.

IT IS SO ORDERED.

---

70. "If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages ..." 29 U.S.C. § 260.

71. *See* Defendant's Motion for Partial Summary Judgment, Docket No. 23 (Loggins), Exhibit A (affidavit of Artee Williams), Exhibit B (affidavit of Bill Lowe), Exhibit C (memorandum from the State Personnel Administrator and from the Director of the Department of Corrections).

72. Docket No. 33 (Loggins), Exhibit 4.

73. Docket No. 53.

74. Docket No. 39.

75. Docket No. 36 (Stoneman); Docket No. 23 (Arnold & Loggins).

76. Docket No. 35 (supplement to Motion for Summary Judgment, Docket No. 20).

77. Docket No. 35 (supplement to Motion for Summary Judgment, Docket No. 20).

78. Docket No. 23 (Loggins); Docket No. 33 (Stoneman); Docket No. 18 (Arnold).