**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRIAN F. MONAHAN; ROBERT E.
BALDUCCI, JR.; PAUL BLOCKER;
N. SCOTT MEYERHOFFER; TIMOTHY D.
MORTON, II; MICHAEL S. SCHIPINSKI;
JAMES A. VENTI; KEITH VINCENT;
GEOFFREY SCOTT EVANS; KENNETH S.
CREWS,
Plaintiffs-Appellees,

No. 95-1944

and

DAVID J. HIGGINS; RICHARD R.
REID, JR.,
Plaintiffs,

v.

COUNTY OF CHESTERFIELD, VIRGINIA,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-94-844)

Argued: May 9, 1996

Decided: September 17, 1996

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
NORTON, United States District Judge for the District
of South Carolina, sitting by designation.

_____

Reversed by published opinion. Judge Norton wrote the opinion, in
which Chief Judge Wilkinson and Judge Michael joined.

**COUNSEL**

**ARGUED:** Michael Paul Falzone, HIRSCHLER, FLEISCHER, WEINBERG, COX & ALLEN, Richmond, Virginia, for Appellant. Michael Tarcissius Leibig, ZWERDLING, PAUL, LEIBIG, KAHN, THOMPSON & DRIESEN, Fairfax, Virginia, for Appellees. **ON BRIEF:** Steven L. Micas, County Attorney, Michael P. Kozak, Assistant County Attorney, Wendell C. Roberts, Assistant County Attorney, Chesterfield, Virginia, for Appellant. Carla M. Siegel, ZWERDLING, PAUL, LEIBIG, KAHN, THOMPSON & DRIESEN, Fairfax, Virginia, for Appellees.

_____

**OPINION**

NORTON, District Judge:

This is a case brought by Plaintiffs-Appellees, a group of police officers employed by Defendant-Appellant Chesterfield County, Virginia ("County"), for back pay compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. On cross-motions for summary judgment, the district court granted summary judgment for Plaintiffs, and Chesterfield County appealed. Although Plaintiffs contend they are due straight time back pay under the FLSA, they concede that the County has properly compensated them for all overtime hours under the challenged pay system and that their hourly wages greatly exceeded the statutory mandated minimum wage. Plaintiffs brought this action under the FLSA not for any violation of minimum wage or overtime laws, but for straight time compensation.

We disagree with the lower court that summary judgment for Plaintiffs was appropriate. Instead, after reviewing the record and the FLSA, we believe that summary judgment should have been granted for the employer County. We find that fundamental to determining the validity of an employee's straight time claim under the FLSA is a determination by the trier of fact of the terms of the employee's express or implied employment agreement. If the employee has been paid for all nonovertime hours at a lawful rate pursuant to an employment agreement to which that employee has impliedly or expressly

2

agreed, and the employee has also been paid at a lawful rate for all overtime hours, then the employee does not have a claim for an hourly compensation dispute under the FLSA. Additionally, we disagree with the lower court that the FLSA is the proper vehicle to pursue back pay for straight time in pay cycles in which an employee has worked no overtime and has been paid at least minimum wage for all hours worked. Considering the evidence in the record with respect to the terms of Appellees' employment agreements in conjunction with the FLSA's express remedies and historical purpose, we reverse the judgment of the lower court and instead grant summary judgment for Defendant-Appellant.

I.

We review the district court's grant of summary judgment de novo. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). In reviewing a district court's grant of summary judgment, the "appellate court is required to apply the same test the district court should have utilized initially." Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977). All evidence must be viewed in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). Further, "when an appeal from a denial of summary judgment is raised in tandem with an appeal of an order granting a cross-motion for summary judgment, we have jurisdiction to review the propriety of the denial of summary judgment by the district court." Sacred Heart Medical Ctr. v. Sullivan, 958 F.2d 537, 543 (3d Cir. 1992) (citing Nazay v. Miller, 949 F.2d 1323, 1328 (3d Cir. 1991)). "In addition, where, as here, the facts are uncontroverted, we are free to enter an order directing summary judgment in favor of the appellant." Id. at 543 (citing Nazay, 949 F.2d at 1328).

3

II.

This case was brought by twelve[1] Chesterfield County police officers who request straight time back pay and maintain that the County pay system violates the Fair Labor Standards Act. As law enforcement personnel, the police officers are paid a salary pursuant to a partial exemption to the FLSA provided for law enforcement and fire protection personnel under 29 U.S.C. § 207(k). The officers work a 24-day cycle which has an accompanying overtime threshold of 147 hours. See 29 C.F.R. § 553.230 (1995). [2] During the year, there are customarily fifteen of these 24-day cycles wherein the County schedules the officers to work 135 hours for ten cycles and 144 hours for five cycles.

Each officer is paid an annual salary that the County converts to a biweekly paycheck equal to a non-fluctuating base amount of 1/26th of his annual salary. The County converts their annual salaries to an hourly rate solely to determine the officers' applicable overtime rate. All advertisements placed by the County for job openings solicited applicants for salaried positions. Applicants are also informed of their potential compensation in terms of an annual salary during the interview process. The officers are listed in the Chesterfield County personnel manual as FLSA nonexempt[3] salaried employees. Since June 1, 1990, the County has had in place a policy stating that the officers would be paid overtime in addition to their salary whenever they exceed the 147 hour overtime threshold.

The officers regularly work hours above the normally scheduled 135 hours, and the County has paid overtime at a rate equal to time and a half for all hours worked in excess of the 147 hour overtime

_____

[1] Only ten of the original twelve Plaintiffs are parties to this appeal.
[2] All citations to the Code of Federal Regulations appearing in this opinion are from the 1995 published edition of 29 C.F.R. parts 500 to 899. Although Plaintiffs originally brought this action in 1994, all of the regulations or interpretations found in the 1995 volume and cited in this opinion have remained unchanged.
[3] The term "nonexempt" is used to signify that these officers do not qualify for the FLSA's executive and administrative personnel exemption under 29 U.S.C. § 213(a)(1).

threshold. Additionally, the County pays the officers overtime for all call-outs, extra shifts, court appearances, and special assignments during off duty hours even if the officers have not reached the overtime threshold during a pay cycle. There are numerous times when the officers worked more than the regularly scheduled 135 hours, but did not exceed the 147 hour overtime threshold.

At issue in this action is back pay at a straight time rate for any of the hours worked "in the gap" during cycles in which the police officers have worked in excess of the regularly scheduled period.[4] The officers' claims can be divided into two separate groups. The first category are the claims (collectively referred to as "Claim 1") in which the officers exceeded the 147 hour overtime threshold and are therefore paid overtime for all hours worked in excess of the overtime threshold in addition to their normal salary. With respect to Claim 1, the County contends that the officers' salaries compensated them for all hours up to the 147 hour threshold whereas the officers contend that their salaries did not pay them for the time in the gap. The lower court coined the term "overtime gap time" to describe Claim 1 circumstances. The second category, called "pure gap time" (collectively referred to as "Claim 2"), consists of the circumstances in which the officers have exceeded the 135 hour regularly scheduled time period, but have not exceeded the 147 hour overtime threshold and therefore are paid their normal salary, but are not due any overtime. Similar to Claim 1, the County contends with respect to Claim 2 that the officers are due no further compensation because their salaries compensated them for all gap time in cycles wherein they worked no overtime.

_____

[4] For example, Plaintiff Brian F. Monahan, a Chesterfield County police officer since 1987, states in his affidavit:

> Throughout my tenure in the Chesterfield Police Department, I have been told by numerous supervisors that I would not be paid for the time it takes to put gasoline in my police vehicle prior to roll call, for the time it takes to go to the property room to recover physical evidence prior to court appearances, or for the time it takes to travel to and from and to conduct business at the State Laboratory.

Monahan Aff. ¶ 3, J.A. 42.

5

By ruling in favor of Plaintiffs' summary judgment motion, the lower court held that the County was liable under the FLSA for both Claim 1 "overtime gap time" and Claim 2 "pure gap time." We disagree with the district court's interpretation of the applicability of the FLSA under the circumstances of this case. Today we attempt to place some common sense limitations on claims for straight time brought pursuant to the FLSA.

III.

As noted by the district court, the FLSA has been termed the "minimum wage/maximum hour law." Monahan v. Chesterfield County, Va., Civil No. 3:94CV844, at 4 (E.D. Va., Apr. 4, 1995) (hereinafter "Order"), J.A. 93. "The two central themes of the FLSA are its minimum wage and overtime requirements." Arnold v. Arkansas, 910 F. Supp. 1385, 1392 (E.D. Ark. 1995). The FLSA was originally enacted in 1938 as the result of Depression era high unemployment and abusive working conditions. See Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1176 (7th Cir. 1987). Congress stated the FLSA's purpose was to protect employees from detrimental labor conditions and provide for the general well-being of workers. See Lyon v. Whisman, 45 F.3d 758, 763 (3d Cir. 1995) (citing 29 U.S.C.§ 202). The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages. Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). As noted by the Supreme Court in Overnight Motor Transp. Co. v. Missel, 316 U.S. 572 (1942):

> In a period of widespread unemployment and small profits, the economy inherent in avoiding extra pay was expected to have an appreciable effect in the distribution of available work. Reduction of hours was a part of the plan from the beginning. "A fair day's pay for a fair day's work" was the objective stated in the Presidential message which initiated the legislation. That message referred to a "general maximum working week", "longer hours on the payment of time and a half for overtime" and the evil of "overwork" as well as "underpay."

Id. at 578 (quoting 81 Cong. Rec. 4983, 75th Cong., 1st Sess. (1937)); see Mullins v. Howard County, Md., 730 F. Supp. 667, 672

6

(D. Md. 1990)). "The substantive sections of the FLSA, narrowly focusing on minimum wage rates and maximum working hours, bear out its limited purposes." Lyon, 45 F.3d at 764. Made applicable to state and municipal governments by the Supreme Court's landmark decision in Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985), the FLSA promulgates specific minimum wage and maximum hour requirements. Section 206 of the FLSA mandates the hourly minimum wage due to all employees whereas section 207 delineates maximum work hour limitations. 29 U.S.C. §§ 206-207. Section 207 requires that an employer pay overtime at a rate of one and a half times an employee's regular rate for all hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). Recognizing the unique nature of the work performed by police officers and firefighters, Congress provided a partial exemption to the FLSA's overtime requirements for public agency employers. Id. § 207(k). However, it is well settled that "`[e]xemptions from or exceptions to the Act's requirements are to be narrowly construed against the employer asserting them.'" Johnson v. City of Columbia, S.C., 949 F.2d 127, 129-30 (4th Cir. 1991) (quoting Donovan v. Brown Equip. & Serv. Tools, Inc., 666 F.2d 148, 153 (5th Cir. 1982)). Further, the "FLSA should be given a broad reading, in favor of coverage. It is a remedial statute that`has been construed liberally to apply to the furthest reaches consistent with congressional direction.'" Kelley v. Alamo, 964 F.2d 747, 749-50 (8th Cir. 1992) (quoting Mitchell v. Lublin, McGaughy & Assocs. , 358 U.S. 207, 211 (1959)). Even in light of the broad interpretation given to the FLSA's remedial provisions and the narrowness of its exceptions, we believe the statute's use in this case to be far beyond that intended by its original congressional drafters and many of today's applicable Department of Labor regulations and interpretations. Additionally, its attempted use in this case represents a major expansion of federal jurisdiction in an area that is more appropriate for state court adjudication under state employment and contract law.

IV.

Historically, the majority of FLSA claims in federal court are employee claims for minimum wage and maximum hour violations, but recently employees have been adding on claims for straight time under the auspices of the FLSA. There are not many recent cases addressing this straight time or "gap time" pay issue; however, two

cases, both originating before the same judge in the District Court for the District of Kansas, appear to provide the most recent interpretations of the law relating to gap time pay. Because these cases were heavily relied on below by the district court and both parties, we briefly review their factual background and legal analysis in attempt to synthesize those cases with the conclusion we ultimately reach.

In early 1991, the issue of straight time pay under the FLSA was addressed by Lamon v. City of Shawnee, Kan., 754 F. Supp. 1518 (D. Kan. 1991) (hereinafter "Lamon I"), aff'd in part, rev'd in part, vacated in part, 972 F.2d 1145 (10th Cir. 1992) (hereinafter "Lamon II"), cert. denied, 507 U.S. 972 (1993). Lamon I was an FLSA case brought by a group of Shawnee, Kansas, police officers. Id. at 1521-21. Lamon I came before the court on the issue of damages under the FLSA subsequent to a jury trial in which the jury found "that defendant had established a 28-day work period which partially exempts defendant from paying overtime compensation at a rate of one and one-half times plaintiffs' regular hourly wages for hours worked from 160 to 171 per 28-day work period." Id. at 1520; see 29 C.F.R. § 553.230. The plaintiff police officers worked an 8 1/2 hour shift, but were not compensated for their thirty minute meal period within that shift unless they were called to duty. Lamon II , 972 F.2d at 1148. However, even though under the 28-day/171 hour cycle, the City was only obligated to pay overtime for hours worked in excess of 171, "the City . . . abided by the practice of paying overtime for all work, excluding uninterrupted meal periods, in excess of forty hours per week, or 160 hours per 28 days." Id. at 1148. With respect to the uncompensated meal time,[5] the jury found that the City had violated the express terms of 29 C.F.R. § 553.223 which exempts payment for meal time only if "the employee is completely relieved from duty during meal periods." Lamon I, 754 F. Supp. at 1521 (quoting 29 C.F.R. § 553.223). After referring to section 553.223, the Lamon I court stated:

_____

[5] Although the words "meal time" appear inconsistently throughout the applicable case law and regulations as either "meal time" or "mealtime," we believe that under these circumstances, "meal time" is the proper way to indicate the noun "time" modified by the adjective "meal." Although the word "mealtime" appears in the dictionary, the definition provided is that for a noun meaning: "the usual time of serving or eating a meal." Webster's New World Dictionary 838 (3d Ed. 1988).

The jury specifically found that plaintiffs were not com-
pletely relieved of their duties during meal periods. There-
fore, plaintiffs are entitled to compensation under the FLSA.
The jury further found that defendant has established a 28-
day work period; thus, the rate of compensation owed for
these hours, although hours worked in excess of 40 per
week, is at plaintiffs' regular hourly rate. Consequently,
defendant has failed to compensate plaintiffs for their meal
periods as required by the FLSA.

Id. at 1521 (footnote omitted). Therefore, as a result of the jury's
determination, the Lamon I court held that plaintiffs were entitled to
compensation for meal time under the FLSA. Id.  The court then had
to determine the rate of back pay for these unpaid meal periods. Plain-
tiffs argued that the unpaid meal hours should be paid at an overtime
rate. On the other hand, the City claimed that because these unpaid
meal hours did not total more than ten hours per 28-day cycle and
since the City had properly compensated plaintiffs at an overtime rate
for all hours over 171, any hours between 160 and 171 were compen-
sable only at minimum wage. See id.; 972 F.2d at 1155. Because the
compensable meal hours, when added to all other hours worked in a
cycle, did not exceed the 171 hour overtime threshold, the court found
that the City was liable for an amount equal to the unpaid meal hours
at plaintiff's regular hourly rate. Lamon II, 972 F.2d at 1149. The
court noted the City's contention that there was no requirement under
the FLSA to pay for the hours between 160 and 171 per pay cycle,
but rejected this argument explaining in footnote one of the Lamon I
opinion:

The court notes defendant's extensive briefing of its argu-
ment that there is no express requirement under the FLSA
that plaintiffs be paid for the hours between 160 and 171
which are statutorily exempt from the normal requirement
that these hours are compensable at an overtime rate. How-
ever, the court finds defendant's argument to be unreason-
able in view of the remedial purpose of FLSA. The court
finds the requirement that plaintiffs be paid compensation at
their regular hourly rate to be implicit in the framework of
the FLSA. The court further notes that defendant has con-
ceded that if plaintiffs work more than 171 hours, hours

9

worked between 160 and 171 are compensable at plaintiffs'
normal hourly rate. The court finds there to be no principled
reason for the requirement that plaintiffs work over 171
hours before they are entitled to be paid for time spent
working between 160 and 171 hours.

Id. at 1521 n.1.

In 1992 both parties in Lamon I appealed, resulting in a written
opinion of the Tenth Circuit Court of Appeals in Lamon II, 972 F.2d
1145. One of the appellate issues was "the proper calculation of meal-
time compensation." Id. at 1155 & n.4. Although the jury found these
meal periods were compensable and the district court determined they
were compensable at the regular rate, defendant argued that the hours
between 160 and 171 were not compensable under the FLSA when
the 171 hour threshold was not exceeded, Lamon I , 754 F. Supp. at
1520, but if compensable, that minimum wage was the proper rate.
Lamon II, 972 F.2d at 1155. The Tenth Circuit affirmed the lower
court on the meal time rate issue stating that "the trial court correctly
calculated the rate at which Plaintiffs would be compensated for
mealtimes, if adjudged compensable." Id. at 1159 (emphasis added).
The court explained:

> The appellate record suggests no basis for doubting the dis-
> trict court's finding that each Plaintiff took no more than ten
> hours in meal periods within a 28-day period. This fact,
> along with the unassailed testimony that Plaintiffs received
> overtime compensation for all other time worked in addition
> to their regular 40 hours per week or 160 hours per 28 days,
> forms the factual basis for the district judge's legal conclu-
> sion that mealtime hours, all of which fell within the range
> of 160 to 171 hours per 28 days, would be appropriately
> compensated at a regular hourly rate. See 754 F. Supp. at
> 1521 n.1. We affirm this decision for the reasons expressed
> in the district judge's opinion. As long as time spent for
> meal periods, together with the rest of an officer's compen-
> sable time at a regular wage, would not exceed 171 hours
> per 28 days, no overtime wages would be due for that total
> time, a result consistent with FLSA. Simply because Defen-
> dant chose, after adopting the § 207(k) plan, to continue

10

paying an overtime wage for all hours worked over 160 hours per cycle, while not paying compensation for meal periods, does not compel the conclusion that, <u>were mealtime to be adjudged compensable</u>, the Defendant should be penalized for its own liberality. However, as the district court held, even if the City is not required to pay overtime, compensation for meal periods at a rate less than a regular rate would be contrary to the FLSA.

<u>Id.</u> at 1155 (emphasis added). In affirming that the regular rate was the proper rate of compensation for the meal periods, the Tenth Circuit cited to footnote one in the <u>Lamon I</u> opinion. In so doing, the Tenth Circuit was simply following labor regulations that require all hours worked up to the overtime threshold, including compensable meal time hours, be paid at the regular rate. <u>See</u> 29 C.F.R. §§ 553.221, -.223. It is clear to us that the decisive issue in the <u>Lamon II</u> affirmance, which indirectly addressed straight time gap pay, was the jury's verdict that the City had not complied with the meal time exemption of 29 C.F.R. § 553.223 and the court's damages determination of the rate by which to compensate plaintiffs for meal time. In other words, as we read the <u>Lamon</u> cases, they did not specifically address straight time claims under the FLSA, but rather addressed the compensable rate of back pay for meal time which "fell in the gap" between 160 and 171 hours during a 28-day cycle.

In 1994 the same judge who heard <u>Lamon I</u> also presided over another Kansas case brought under the FLSA by approximately 401 law enforcement plaintiffs. <u>Schmitt v. Kansas</u>, 844 F. Supp. 1449, 1451 (D. Kan. 1994) (hereinafter "<u>Schmitt I</u>").**6** In <u>Schmitt I</u>, the court considered cross motions for summary judgment on numerous FLSA issues including a claim that plaintiffs were wrongfully denied "straight time pay at their regular rate for all hours worked between 160 and 171." <u>Id.</u> at 1451. Like the <u>Lamon</u> plaintiffs, the <u>Schmitt</u> plaintiffs were employed on a 28-day/171 hour overtime threshold pay period. <u>Id.</u> at 1452. The plaintiffs contended that their salaries only compensated them for 160 hours of work per 28-day period whereas the State contended that the monthly salary compensated

_____

**6** Senior District Judge Dale E. Saffels penned <u>Lamon I</u>, <u>Schmitt I</u> and <u>Schmitt II</u>.

11

plaintiffs for all hours worked up to the 171 overtime threshold. Id. at 1452 n.1. In deciding the cross motions for summary judgment, the Schmitt I court divided the straight time claims into "two components: (1) unpaid straight time for periods in which plaintiffs worked no overtime; and (2) unpaid straight time in which plaintiffs worked overtime." Id. at 1457.

Addressing the straight time claims for periods with no overtime first, the Schmitt I court noted the State's position as follows:

> The State argues that plaintiffs cannot prevail on their straight time claim, at least for work periods in which they worked no overtime, because plaintiffs admit that their total compensation for any period divided by the hours worked in that period always exceeds the minimum wage. In support, the State forcefully argues that, according to case law and DOL Letter Opinions, the general rule is that an employee cannot state a claim under the FLSA if her average wage, for a period in which she worked no overtime, exceeds the minimum wage. The court acknowledges that there is a body of authority which supports the State's "general rule."

Id. at 1457 (emphasis added) (footnotes omitted).**7** Along with the abundant case law supporting the State's position, the Schmitt I court also recognized a 1987 Department of Labor Letter Ruling by stating:

_____

**7** In footnotes, the Schmitt I court noted that the State relied on the following cases for this general rule: Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1198 (4th Cir. 1969); United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960); Cuevas v. Monroe Street City Club, Inc., 752 F. Supp. 1405, 1417 (N.D. Ill. 1990); Dove v. Coupe, 759 F.2d 167, 171 (D.C. Cir. 1985); Travis v. Ray, 41 F. Supp. 6, 8 (W.D. Ky. 1941). Schmitt I, 844 F. Supp at 1457 n.6. The court further noted that other cases were in accord with this general rule: Hensley v. MacMillan Bloedel Containers, 786 F.2d 353, 357 (8th Cir. 1986); Marshall v. Sam Dell's Dodge Corp., 451 F. Supp. 294, 301-303 (N.D.N.Y. 1978). 844 F. Supp. at 1457 n.6.

12

In pertinent part, the Letter Ruling provides as follows:

> The City has chosen a 28-day work period for the purpose of applying the provisions of section 7(k) of FLSA. During these 28 days, police officers are normally scheduled for twenty, 8-hour tours of duty, or a total of 160 hours for the work period. However, under the terms of a collective bargaining agreement, the police officers must report for a roll-call formation 15 minutes before the start of each 8-hour tour of duty. You are concerned that these additional 5 hours (20 x 1/4 hour) of work are not being properly compensated under FLSA.
>
> As you were advised in telephone conversations with a member of my staff on March 4 and March 6, the law enforcement employees to whom you refer have been properly compensated under FLSA when, for any work period during which they have worked less than the applicable maximum hours standard, they have received at least the minimum wage ($3.35 an hour) for all of their hours worked.
>
> For example, a police officer who is paid at a rate of $10.50 an hour for 160 hours ($10.50 x 160 hours = $1,680) is paid in compliance with FLSA even though he or she actually works a total of 165 hours during a 28-day work period ($3.35 x 165 hours = $552.75).

Id. at 1457 (quoting DOL Letter Ruling, unnumbered, Oct. 22, 1987 (hereinafter "1987 DOL Letter Ruling")) (emphasis added). In addition to the case law supporting the general rule and the 1987 DOL Letter Ruling, the court recognized that 29 C.F.R.§ 778.322 also supported the State's position. Id. at 1459 n.11. In spite of this abundance of authority, the Schmitt I court denied the State's motion for summary judgment on straight time pay without overtime because it believed Lamon II to be "directly" on point. Id. Referring to the Tenth

13

Circuit's citation in Lamon II to footnote one in Lamon I, the Schmitt I court stated:

> Indeed, the Tenth Circuit specifically endorsed not only the decision to compensate plaintiffs at their regular hourly rate but also the very reasons given in the footnote supporting the decision to compensate plaintiffs at their regular rate . . . .
>
> . . . .
>
> In Lamon [I], partially exempt plaintiffs were uncompensated for up to ten hours worked between 160 and 171 per 28-day work period. This court awarded plaintiffs compensation for those hours at their regularly hour rate. The Tenth Circuit clearly and explicitly affirmed the award.

Id. at 1458 (emphasis added). Judge Saffels noted a similarity between the issues presented in Lamon and Schmitt and stated: "Accordingly, plaintiffs argue that, like the employees in Lamon, they are entitled to be compensated at their regular rate for all hours worked between 160 and 171. . . . " Id. at 1458. The Schmitt I court made this determination although recognizing in a footnote that the basis of the Lamon I decision was compensation for unpaid meal time at the regular rate. The court noted:

> In Lamon [I], it was undisputed that plaintiffs received no compensation at all for meal times. This court found that plaintiffs' meal times did not exceed 10 hours in any given 28-day work period. Thus, plaintiffs' claim was for 10 unpaid hours worked between 160 and 171 in each 28-day period. Similarly, plaintiffs' claim in the instant case is for up to 11 unpaid hours worked between 160 and 171 in a given 28-day period.

Id. at 1458 n.10 (emphasis added). The Schmitt I court denied the State's motion for summary judgment because the State was unable to provide controlling authority contrary to the Lamon II holding which the court thought, as Tenth Circuit authority, was "good law

14

and relevant." Id. at 1459. Therefore, although Judge Saffels saw these cases to be factually similar, there is clearly a basic difference between the Lamon meal time, which fell in the gap, and the Schmitt pure gap time claim.

With respect to straight time for periods in which plaintiffs worked overtime, the Schmitt I court also denied the State's motion for summary judgment. Id. at 1459-60. In so doing, the court found 29 C.F.R. § 778.315 and 29 C.F.R. § 778.317 to be "directly on point." Id. at 1460. The court stated: "In these two regulations, the Administrator explains that an employer has not paid overtime in accordance with FLSA unless the employer has paid the employee at her regular rate for all straight time worked in that period." Id. at 1459. The Schmitt I court ultimately denied both parties' motions for summary judgment on the straight time claims finding that there was a genuine issue of material fact as to whether plaintiffs' monthly salary compensated them for all nonovertime hours per period or just for those hours worked up to 160. Id. at 1460-61.

After a denial of both parties' summary judgment motions, the Schmitt I case proceeded to a nonjury trial in which the State ultimately prevailed. Schmitt v. Kansas, 864 F. Supp. 1051 (D. Kan. 1994) ("Schmitt II"). Although noting his displeasure with the ultimate result because he felt that the State had not "treated the plaintiffs fairly" as law enforcement officers, Judge Saffels reluctantly found that the State's 28-day compensation plan was "within the law." Id. at 1052-53. As in Schmitt I, the Schmitt II opinion again recognized that plaintiffs' straight time claim was "contrary not only to the discussion found in 29 C.F.R. § 778.322, but also to a considerable body of additional authority." Id. at 1062 (footnotes omitted).**8** In its analysis, the court initially turned to Lamon I and noted that the Tenth Circuit's affirmance of that decision addressed whether the Lamon I court had applied the proper rate to the back pay due for the unpaid meal time. Id. at 1063-64. Most noteworthy, in determining the viability of plaintiffs' straight time claim, the Schmitt II court stated that to do so, it "must examine the terms of their employment with the

_____

**8** Internal to this quote were footnotes in which the Schmitt II court quoted the full text of 29 C.F.R. § 778.322 and cited to the numerous cases supporting the "general rule" mentioned in note 7 supra.

15

State." Id. at 1064. After looking to those terms, the court found that there was overwhelming evidence that plaintiffs were paid and appointed on a monthly salary basis as opposed to being hourly wage employees.**9** Id. at 1064. Because plaintiffs were paid pursuant to a monthly salary, the court denied plaintiffs' straight time claims and held that the monthly salaries "compensate all nonovertime hours worked per pay period." Id. at 1069.

In summary, we see the Lamon cases as standing for the proposition that meal time hours must meet the requirements of 29 C.F.R. § 553.223 to be exempted from pay, and if they are nonexempt and have not been properly paid, they must be paid at a regular rate if the total meal time hours do not exceed the overtime threshold of the applicable pay cycle. We do not believe, by affirming the lower court on the meal time rate of payment issue, that the Tenth Circuit in Lamon II unequivocally stated that employees can make out a viable claim for pure gap time under the FLSA. Most importantly, we believe that Schmitt II stands for the proposition that to the extent that there can exist a straight time claim under the FLSA, the court must first determine the terms of the employment agreement. If there is no minimum wage or maximum hour violation, there is also no claim under the FLSA for straight time gap pay if employees have been properly compensated by salary for all nonovertime hours in accordance with the employment terms to which they have either expressly or impliedly agreed. With these cases in mind, we now turn to the appeal at hand.

_____

**9** Although the court derived the terms of plaintiffs' employment in Schmitt II from applicable state regulations and statutes, see 864 F. Supp. at 1064-67, we believe that in absence of such state laws or regulations, the trier of fact can still readily determine the terms of one's employment agreement utilizing basic contract law. See Zolteck v. Safelite, 884 F. Supp. 283, 286-87 (N.D. Ill. 1995) (finding an employment agreement being implied from conduct in absence of any express agreement); cf. 29 C.F.R. § 778.315 (discussing payment of straight time pursuant to an employee's "contract (express or implied) or under any applicable statute").

16

V.

We find that based on the evidence in the record, the employees in this case were properly compensated by an annual salary for all non-overtime hours for which they either expressly or impliedly agreed to work. Because we are hearing this appeal on cross-motions for summary judgment, we reverse the district court's ruling in favor of Plaintiffs on Claim 1 and Claim 2 and instead grant summary judgment in favor of Defendant-Appellant with respect to both Claims.

In granting summary judgment for Plaintiffs on Claim 1, overtime gap time, the district court relied on the official interpretations promulgated by the Department of Labor, in particular 29 C.F.R. § 778.315 and 29 C.F.R. § 778.317.[10] These interpretations address compensation of straight time hours when an employee works overtime during a pay cycle. Implicit to a proper application of these overtime interpretations is a foundational understanding of the terms of

_____

[10] We recognize that there is a difference between "regulations," such as those contained in 29 C.F.R. pt. 553 and official "interpretations" of the Department of Labor, such as those contained in 29 C.F.R. pt. 778. See Sherwood v. Washington Post, 871 F. Supp. 1471, 1480-81 (D.D.C. 1994) (noting that many courts erroneously use these terms interchangeably most likely because both are collectively contained in the Code of Federal Regulations). Compare 29 C.F.R. § 553.2(a) (purpose of part 553 is to set forth regulations to carry out FLSA provisions) with 29 C.F.R. § 778.1 (purpose of part 778 is to provide DOL's official interpretation of overtime provisions of § 207). However, whether the statement is a regulation or an interpretation, as we have previously stated: "[W]e recognize that the interpretation of a statute by the agency charged with its enforcement ordinarily commands considerable deference." Watkins v. Cantrell, 736 F.2d 933, 943 (4th Cir. 1984) (citing Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 107 (1979)). Further, "'We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" Id. at 943 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)); Ritter v. Cecil County of Housing & Community Development, 33 F.3d 323, 328 (4th Cir. 1994) (citing Kennedy v. Shalala, 995 F.2d 28, 30 n. 3 (4th Cir. 1993)).

17

the employment agreement. See § 778.315 (referring to payment for nonovertime hours under the terms of the employee's implied or express contract); § 778.317 (requiring knowledge of the employee's compensation agreement); cf. Schmitt II, 864 F. Supp. at 1064-65 (finding no FLSA violation straight time after looking to the terms of the employment contract); Yourman v. Dinkins, 865 F. Supp. 154, 165-66 (S.D.N.Y. 1994) (denying claim for straight time in weeks in which overtime was worked after finding plaintiffs' salaries were intended to provide for straight time pay for all hours worked in the workweek), aff'd, 84 F.3d 655, 656 (2d Cir. 1996). Having looked at sections 778.315 and 778.317, we hold that if the mutually agreed upon terms of an employment agreement do not violate the FLSA's minimum wage/maximum hour mandates and provide compensation for all nonovertime hours up to the overtime threshold, there can be no viable claim for straight gap time under the FLSA if all hours worked above the threshold have been properly compensated at a proper overtime rate.

In this case, we believe that there was more than ample evidence in the record for the court to determine the terms of Plaintiffs' employment agreements and that those terms as a matter of law did not violate the FLSA. The overwhelming evidence leads to but one conclusion: these officers knew they worked on a salaried basis and knew or should have known that their salary was intended to compensate them for all hours worked up to the overtime threshold.

In determining Plaintiffs should be compensated for gap time when overtime hours were worked during a pay cycle, the district court first looked to 29 C.F.R. § 778.315. This interpretation expressly requires that in order to determine overtime compensation, one must first look to the employment agreement to determine whether the employer has first paid all straight time due under the agreement. It states:

> In determining the number of hours for which overtime compensation is due, all hours worked (see § 778.223) by an employee for an employer in a particular workweek must be counted. Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. This extra compensation for

18

> the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.

§ 778.315 (emphasis added). Therefore, under 778.315, if (1) all straight time compensation due to the employee for nonovertime hours under the express or implied employment agreement or applicable statute has been paid and (2) the employee has been compensated at a rate of at least time and a half for all hours worked in excess of the maximum allowed, the employer has acted in compliance with the FLSA. In this case, we find that the County complied with this regulation. In fact, the County had a pay structure that not only complied with the FLSA, but was also very beneficial to the officers because it even exceeded the compensation system required by the FLSA.

First, considering the evidence in the record concerning the terms of the employment agreement, Defendant presented the affidavit of the Chesterfield County Chief of Police, Joseph E. Pittman, who served as the Chief for over nineteen years and had been employed in the County Police Department since 1957. Pittman Aff. ¶ 1, J.A. 44. Referring to the County's "Classification and Compensation Plan, Fiscal Year 1994-1995," he testified that the officers are "classified by the County as non-exempt salaried employees." Id. ¶ 2. He further stated that the annual salary paid to Plaintiffs "is intended to apply to all hours worked up to the FLSA overtime threshold." Id. ¶ 3. Additionally, the County presented an official Chesterfield County Police Department Policy dated June 1, 1990, which specifically supported the Chief's declaration and informed the police officers of the County's policy with respect to FLSA compensation issues. In relevant part, it states:

> I. POLICY:
>
> It is the policy of the Department to comply with the provisions of the Fair Labor Standards Act, as well as the Chesterfield County Personnel Regulations and the Chesterfield County Procedure pertaining to attendance,

19

leave and FLSA. This policy establishes procedures to ensure compliance.

II. <u>PURPOSE</u>:

To inform all Police personnel of the proper procedure for completing the standardized Time Accounting sheet (PD-160), general payroll procedure, and procedures for making payroll complaints.

III. <u>PROCEDURES</u>:

A. The established work period for nonexempt full time employees varies depending upon the FLSA category.

1. Sworn nonexempt uniformed operations personnel are designated to work a 24 day cycle that has a 146.6 hour threshold or <u>28 day cycle that has a 171 hour threshold. When this threshold is exceeded within the cycle the officer will be paid for overtime.</u>

. . . .

B. <u>Overtime will be paid to nonexempt employees exclusive of the FLSA threshold</u> in the following circumstances:

1. For all call-outs.

2. For court attendance during off duty hours.

J.A. 53-54 (emphasis added). Under this policy, if overtime is paid for all hours worked in excess of a set threshold, the only reasonable inference is that the salary paid to the officers compensated them for all hours worked up to that overtime threshold.

The Chesterfield County Police Department's Human Resources Administrator, John McLenagen, presented an affidavit in which he stated:

20

2. Patrol officers are classified as salaried employees by the County. All advertisements to the general public for openings with the Police Department state that the position is compensated on an annual salary.

3. During the initial screening and up through a candidate[']s offer of employement [sic], applicants are told of the compensation in terms of an annual salary.

McLenagen Aff. ¶¶ 2-3, J.A. 58. Attached to McLenagen's affidavit are copies of five separate classified ads from 1992 to 1995, all of which advertise openings in the County Police Department, solicit applicants and describe the benefits of and qualifications for the jobs. In each ad, the compensation is listed in terms of an annual salary ranging from $23,455 to $24,628. McLenagen's affidavit provides support to the proposition that any applicant responding to the advertisements knew or should have known that the County police officer position was a salaried position.

In spite of this evidence, Appellees repeatedly claim that the County never specifically told them the number of hours for which their salary was intended to compensate. For example, Appellees' Brief states:

Advertisements for the hiring of officers state that newly hired officers receive an "annual salary" . . . . However, nowhere in either the advertisements for the position of patrol officer or in the County's Compensation and Classification Plan (which establish salary ranges for given positions) is there any mention of the number of hours to which the "salary" corresponds. Further, the policy which calls for overtime when an officer works beyond 146.6 hours does not state that an officer's salary fully compensates him or her up to the overtime threshold. The County has no collective bargaining agreement or contract or other agreement with the plaintiffs pertaining to this issue. Similarly, there is no statute or other law governing the number of hours the annual compensation covers.

21

Brief of Appellees at 9. We do not put much weight in nor find such "no one told us" claims very persuasive.[11] Even if parties never expressly agree to the terms of employment, an agreement can easily be implied from their conduct. Zolteck v. Safelite Glass Corp., 884 F. Supp. 283, 286 (N.D. Ill. 1995).

> Where the parties' actions and the circumstances demonstrate that the plaintiff was aware of a particular condition of employment, the employee's acceptance of, and continued, employment manifests acceptance of the condition. However, if the employee contemporaneously protests, there is no implied agreement to the condition.

Id. at 286 (citations omitted) (citing Bodie v. City of Columbia, S.C., 934 F.2d 561, 566 (4th Cir. 1991), and Johnson v. City of Columbia, S.C., 949 F.2d 127, 131 (4th Cir. 1991)). Although there were no written contracts between the officers and the County, there clearly existed an employment agreement. Further, we do not believe that there needs to be any written contract, state law, regulation or statute, nor any collective bargaining agreement to reveal what is obvious from the terms of the written County Policy in addition to the parties' conduct. The County hired and consistently paid the officers a salary and told them the hourly threshold during the work cycle that they would begin receiving overtime. The officers knew their compensation in terms of an annual salary, they accepted a biweekly check for the same non-fluctuating base amount every two weeks, they repeatedly worked hours above and below the normally scheduled 135 hours per pay cycle, and they were always paid overtime after 147 hours. We believe that the well-educated and intelligent men and women serving as law enforcement officers today, including those in Chesterfield County, are clearly capable of comprehending the mate-

_____

[11] Similarly, if the employer contends the annual salary compensates its employee for all hours up to the overtime threshold while the employee claims the salary compensates only for a lower amount of regularly scheduled hours, we would find not too persuasive claims by employees that "no one told them" that the hours in the gap were not compensable because obviously the employer would never make such a statement because the employer understood those gap hours to be compensated under the terms of the contract. See Arnold, 910 F. Supp. at 1394 & n.45.

22

rial terms of their employment. Further, we do not find that the FLSA places the burden on the employer to hold an employee's hand and specifically tell him or her that the salary "fully compensates him or her up to the overtime threshold," if that fact can be easily gleaned from employment policies, practices, and procedures. **12**

Looking to the hourly pay system the County utilized, it complied with the applicable labor regulations and was even financially beneficial to the officers in numerous respects. The labor regulation that lists the maximum hours for work periods for law enforcement officers states:

> (b) For those employees engaged in law enforcement activities (including security personnel in correctional institutions) who have a work period of at least 7 but less than 28 consecutive days, no overtime compensation is required under section 7(k) until the number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the work period bears to 28.
>
> . . . .

|  | Maximum hours standards |
| Work period(days) | Law enforcement |
| --- | --- |
| 28 | 171 |
| 27 | 165 |
| 26 | 159 |
| 25 | 153 |
| 24 | 147 |

_____

**12** We recognize that there is somewhat of a heightened burden placed on an employer utilizing the fluctuating workweek method of payment to demonstrate a "clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number. . . ." 29 C.F.R. § 778.114. However, we believe that in absence of a written contract, an employer can also demonstrate the existence of this clear mutual understanding from employment policies, practices, and procedures. See infra Part VI.

23

29 C.F.R. § 553.230 (emphasis added). The County complied with this regulation by paying the officers overtime for all hours worked in excess of 147 in each 24-day cycle. Not only did it pay the officers when they exceeded this threshold, the County also paid the officers overtime or "premium pay" for all off-duty court appearances, call backs, extra shifts and special assignments even if the officers had not exceeded the overtime threshold during the pay cycle.[13] For example, in the "Summary of Time Accounting Information of Plaintiff Tim Morton," provided to the district court, which tracks the employment hours of Plaintiff Morton for the eighteen pay cycles between March 1, 1992 and August 29, 1994, Morton never worked regularly scheduled hours in excess of 147 hours in any pay period, but was paid "overtime" in every pay cycle. J.A. 67. In fact, Morton worked an average of 131 "regular" hours per pay cycle, but also was paid approximately 27 "overtime hours" per cycle. As Defendant notes with respect to the hours listed in the "overtime" column of Morton's chart:

> The word "overtime" is a misnomer and does not correctly describe the hours noted in this column. All patrol officers receive the premium rate for these hours worked regardless of the number of total actual hours worked in the FLSA cycle. Thus, literally, hours in this column are not "overtime" within the meaning of the FLSA. These premium hours in this case would be likely "Court time" and "call back" time.

J.A. 67 n.1.

In spite of the County's compliance with the maximum hour mandates of the FLSA, Plaintiffs contend in Claim 1 that because the

_____

[13] In light of this payment policy, we find it rather petty that part of the basis of Plaintiff Monahan's straight time claim as stated in his affidavit is the County's failure to pay him for the time it takes him to put gas in his patrol car prior to roll call in addition to the time it takes to go to the property room to recover physical evidence prior to court appearances for which the County pays him time and a half to attend. See supra note 4. Surely, this is not the evil of overwork and underpay that the FLSA was intended to remedy.

24

County regularly scheduled them for 135 hours per cycle, instead of the 147 maximum allowed, their salary only compensated them for those 135 hours and that they are therefore due the gap compensation when overtime hours were worked. This argument seems counter-intuitive and rather absurd for several reasons. First, if the County had scheduled the officers for all hours up to the 147 hour threshold per cycle, Plaintiffs would not be before us today because there would be no "gap time" issue, but the officers would be working three to twelve more hours per pay cycle[14] and approximately 135 more hours per year for the same salary amount. Additionally, if the County did not have the policy that provided that the officers always receive pre-mium pay for special appearances, court time, and call back time regardless of their normally scheduled hours, but rather had insisted that the first three to twelve hours of such non-regularly scheduled work backfill the gap, Plaintiffs would not have any proposed FLSA straight time claim because again there would be no gap time issue and no minimum wage/maximum hour violation. Finally, accepting Appellees' contention would mean that any time a government employer, attempting to balance budgetary constraints with FLSA compliance, adjusts or reduces the hours its police officers work in a given pay cycle, the employer would face an FLSA straight time claim. This would be true even if the employer has not violated the law's minimum wage/maximum hour mandates. Such a proposition would leave an employer little, if any, flexibility before it is subject to being haled into court to face a purported "FLSA" claim.

Not only did the County comply with the FLSA's maximum hour mandates, but it also complied with its minimum wage and overtime calculation provisions. The County paid the officers a salary that con-verted to a regular hourly rate well in excess of the statutory mini-mum wage. From 1991 to 1994, the converted hourly wage of Plaintiffs varied between $10.01 per hour and $16.09 per hour. Powers' Aff., J.A. 32. The County's method of determining the over-time or premium rate paid to the officers did not violate any regula-tions nor interpretations.[15] To determine the overtime rate, an

_____

[14] Depending on whether the officers were working a 135 or 144 hour cycle.

[15] Appellees note that the County's calculation of the regular rate involved a "technical mis-application" of the FLSA "regular rate" rules,

25

employer must ultimately convert a salaried employee's annual pay to a regular hourly rate, which is then used as a base to calculate the 150% overtime or premium rate. See 29 C.F.R.§ 778.113. To make this determination, the County utilized a base of 2,080 hours per year, a figure that conveniently corresponds to 40 hours per week, and the County divided the officers' annual salary by the 2,080 divisor. The County claimed that it uniformly used the 2,080 hour divisor to calculate the regular rate for "all salaried employees Countywide except for Chesterfield County firefighters." Vaughn Aff.¶ 5, J.A. 65.

Again, the officers put forth an argument that is contrary to their best financial interests in attacking the County's calculation of their overtime rate. They implicitly argue that the County should have used a higher divisor equal to the annual number of 2,234 threshold hours.[16] However, use of such higher number of annual threshold hours would have resulted ultimately in their being paid approximately 7% less for overtime hours.[17] Plaintiffs contend, and the lower court apparently agreed, that the County's use of the 2,080 hour divisor evidenced an inference that the County intended the annual salaries to compensate the officers for approximately 139 hours per cycle, which is less than the threshold number of hours. Order at 3 n.2 (citing 29 C.F.R. § 778.113(a)), J.A. 92.

_____

but recognize that the calculation method the County used was more financially beneficial to the officers. Therefore, Appellees state they do not raise this issue as a violation of the FLSA. Brief of Appellees at nn.1 & 4; see 29 C.F.R. § 778.113(b). The absurdity of Appellees argument here is demonstrated by the fact that plaintiff employees in other FLSA actions have argued for the exact same favorable method of overtime rate calculation used by Chesterfield County. See Arnold, 910 F. Supp. at 1395. We believe that any "technical mis-application" that results in additional income to employees above the minimum required is no violation of the law. See infra note 17.

[16] Assuming a 24-day cycle, this number represents the product of 15.2 cycles multiplied by the overtime threshold of 147.

[17] For example, assuming the officer is hired with an annual salary of $23,455. Using 2,080 hours per year, the regular rate would be $11.28 per hour and the corresponding overtime rate would be $16.91 per overtime hour. Using 2,234 hours per year, the same salary would equate to a regular rate of $10.50 per hour with a lower overtime rate of $15.75 per hour.

We think manipulating the math to create such an inference is a stretch at best. More plausible and quite logical is that the County used the base number of 2,080 hours per year because this number reflects an employee working 40 hours of straight time per week and the FLSA is based on an overtime compensation scheme for hours worked in excess of 40 per week. We note other municipalities have used the 2,080 hour divisor without impunity under similar circumstances. See e.g., Schmitt II, 864 F. Supp. at 1055, 1057 & nn.8-9. Therefore, we do not believe that use of the 2,080 divisor was in any way violative of the law nor could rationally lead to an adverse inference that the agreed upon salary was intended to compensate the officers for an amount of hours below the threshold.

In deciding Plaintiffs were due straight time compensation for Claim 1 overtime gap time hours, the district court also relied on 29 C.F.R. § 778.317, which specifically addresses"Agreements not to pay for certain nonovertime hours." There is no evidence in the record that leads us to believe that this interpretation even applies. The interpretation states:

> An agreement not to compensate employees for certain nonovertime hours stands on no better footing since it would have the same effect of diminishing the employee's total overtime compensation. An agreement, for example, to pay an employee whose maximum hours standard for the particular workweek is 40 hours, $5 an hour for the first 35 hours, nothing for the hours between 35 and 40 and $7.50 an hour for the hours in excess of 40 would not meet the overtime requirements of the Act. Under the principles set forth in §778.315, the employee would have to be paid $25 for the 5 hours worked between 35 and 40 before any sums ostensibly paid for overtime could be credited toward overtime compensation due under the Act. Unless the employee is first paid $5 for each nonovertime hour worked, the $7.50 per hour payment purportedly for overtime hours is not in fact an overtime payment.

29 C.F.R. § 778.317. In this case, we find no express or implied agreement not to compensate the officers for the gap hours. Rather, the County's contention that the agreement was that the salary com-

27

pensated the officers for all hours worked up to the threshold is fully supported by the record. The fact that the officers were regularly scheduled for less than the threshold does not indicate that there was any agreement not to compensate them for the gap hours, but instead is more likely indicative of County policy not to schedule them for all hours for which they were already being compensated thereby providing a three to twelve hour buffer per cycle before overtime compensation must be paid. Payment plans that comply with the FLSA, but yet are designed with the flexibility inherent to the law enforcement exemption to explicitly avoid the incurment of overtime hours are not unlawful. Adams v. City of McMinnville , 890 F.2d 836, 839-40 (6th Cir. 1989) (finding lawful a reduction in firefighters' work hours to avoid payment of overtime made in response to legitimate budgetary restraints). But see Walling v. Helmerich & Payne, 323 U.S. 37, 42 (1944) (finding unlawful sham changes in employment scheduling and wages made simply to avoid the FLSA's mandates). "The FLSA guarantees that premium compensation will be paid to employees who work overtime hours. But it does not guarantee employees that they will be able to work overtime hours in order to receive premium pay." Id. at 840; see Blackie v. State of Maine, 75 F.3d 716, 723 (1st Cir. 1996); York v. City of Wichita Falls, 48 F.3d 919, 920-21 (5th Cir. 1995). "Section 207k gives employers of fire protection and law enforcement personnel greater leeway in structuring wage and time calculations." Lamon II, 972 F.2d at 1153.

The lower court also indicated, by citation only, a reliance on 29 C.F.R. § 778.322 which addresses "Reducing the fixed workweek for which a salary is paid." Order at 7, J.A. 96. Again, we find that this interpretation provides Plaintiffs no support, because there is no evidence to indicate that there was any understanding of the parties that Plaintiffs' work schedule was reduced from one fixed hourly work cycle to another fixed hourly work cycle. Section 778.322 in part states:

> If an employee whose maximum hours standard is 40 hours was hired at a salary of $200 for a fixed workweek of 40 hours, his regular rate at the time of hiring was $5 per hour. If his workweek is later reduced to a fixed workweek of 35 hours while his salary remains the same, it is the fact that it now takes him only 35 hours to earn $200, so that he

28

earns his salary at the average rate of $5.71 per hour. His regular rate thus becomes $5.71 per hour; it is no longer $5 an hour. Overtime pay is due under the Act only for hours worked in excess of 40, not 35, but if the <u>understanding of the parties</u> is that the salary of $200 now covers 35 hours of work and no more, the employee would be owed $5.71 per hour under his employment contract for each hour worked between 35 and 40. He would be owed not less than one and one-half times $5.71 ($8.57) per hour, under the statute, for each hour worked in excess of 40 in the work-week. <u>In weeks in which no overtime is worked only the provisions of section 6 of the Act, requiring the payment of not less than the applicable minimum wage for each hour worked, apply so that the employee's right to receive $5.71 per hour is enforceable only under his contract.</u> However, in overtime weeks the Administrator has the duty to insure the payment of at least one and one-half times the employee's regular rate of pay for hours worked in excess of 40 and this overtime compensation cannot be said to have been paid until all straight time compensation <u>due the employee under the statute or his employment contract has been paid.</u> Thus if the employee works 41 hours in a particular week, he is owed his salary for 35 hours--$200, 5 hours' pay at $5.71 per hour for the 5 hours between 35 and 40--$28.55, and 1 hour's pay at $8.57 for the 1 hour in excess of 40--$8.57, or a total of $237.12 for the week.

29 C.F.R. § 778.322 (emphasis added).

There is no evidence in the record indicating that the officers were hired for any fixed hourly "work period"[18] nor that there was any understanding by the parties that the officers' hours were reduced to another "fixed" work period. Although Plaintiffs were regularly scheduled to work 135 hours during the 24-day cycle, the hours actually worked more often than not varied above and below 135 hours. <u>See</u> J.A. 67.[19] Because there is no evidence that there was any kind

_____

[18] <u>See</u> 29 C.F.R. § 553.233.
[19] In their Brief, even Appellees recognize there was no fixed schedule and state that the "individual officers' actual work hours often vary above the scheduled hours . . . ." Brief of Appellees at 8.

of understanding by the parties to reduce the terms of employment from one fixed hourly amount to another fixed hourly amount, this aspect of the interpretation does not apply. On the other hand, this interpretation clearly supports the County's position with respect to Claim 2. It states: "In weeks in which no overtime is worked only the provisions of section 6 of the Act, requiring the payment of not less than the applicable minimum wage for each hour worked, apply so that the employee's right to receive $5.71 per hour is enforceable <u>only under his contract</u>." <u>Id.</u>; <u>see Schmitt I</u>, 844 F. Supp. at 1459 n.11; <u>Schmitt II</u>, 864 F. Supp. at 1062. Therefore, section 778.322 again reinforces the premise that the court must know the terms of a person's employment agreement before making any overtime determinations under the FLSA. Additionally, it clearly states that absent an overtime or minimum wage violation, an employee's gap time claim is not cognizable under the FLSA.

Having concluded that summary judgment for Plaintiffs on Claim 1 overtime gap time was inappropriate, we find that summary judgment should be granted instead for the County. The evidence of the employment agreements leads to only one rational conclusion - that Plaintiffs were properly paid an annual salary to which they either expressly or impliedly agreed and they worked under an employment agreement which in no way violated the FLSA.[20] For all Plaintiffs, whether hired before or after the June 1, 1990 Policy, even in the absence of a written contract, an employment agreement existed based upon the County's written policy and more importantly the

_____

[20] Again, although Appellees represent that they might not have clearly understood the number of hours for which their salary compensated them, we believe that if the officers accepted a salaried position and knew that they would be paid overtime when they exceeded 147 hours of work in a 24-day cycle, the only logical conclusion is that their salaries compensated them for all hours worked prior to the 147 hour threshold. More likely than not, the number of hours the officers were employed to work was a material term of their employment agreement. It is difficult to believe that the officers would blindly accept these positions unaware of the hours they would be expected to work or can now claim they were unaware of those hours in spite of their continued and repeated acceptance of paychecks under the same scheduling cycle. <u>See Harrison v. City of Clarksville, Tenn.</u>, 732 F. Supp. 810, 815 (M.D. Tenn. 1990).

employees' continual and repeated acceptance of their paychecks without objection under the 24-day/147 hour pay cycle. See Bodie v. City of Columbia, 934 F.2d 561, 564-65 (4th Cir. 1991) ("[C]ontinuance in the job and acceptance under the new plan of payment was sufficient to create a valid agreement, even though the agreement was implied and not in writing") (citing Rouseau v. Teledyne Movible Offshore, Inc., 805 F.2d 1245 (5th Cir. 1986), cert. denied, 484 U.S. 827 (1987); Rotondo v. City of Georgetown, S.C. 869 F. Supp. 369, 376-77 (D.S.C. 1994) (citing Harrison v. City of Clarksville, Tenn., 732 F. Supp. 810, 815 (M.D. Tenn. 1990)). "[W]e will also not allow employees merely to grumble about the compensation scheme and then later spring a surprise attack on an employer who has tried to comply with the options that the FLSA provides." Holb v. City of Beaufort, Nos. 91-2068, 92-1427, slip op., 1993 WL 219806 at *5 (4th Cir. June 22, 1993) (unpublished opinion, full text available on Westlaw) (citing Bodie, 934 F.2d at 564). Any dispute between these two parties about the number of hours for which the employees' salary was intended to compensate them is not cognizable under the FLSA, but instead should be pursued under state contract law.

VI.

We now turn to Plaintiffs' Claim 2 for "pure gap time." We also find that there is no cause of action under the FLSA for pure gap time when there is no evidence of a minimum wage or maximum hour violation by the employer. Again, because we are hearing this appeal on cross-motions for summary judgment, we reverse the district court's ruling in favor of Plaintiffs on Claim 2 and instead grant summary judgment in favor of Defendant-Appellant.

The lower court erroneously relied on 29 C.F.R.§ 778.114 and Lamon I & II in rendering its decision on pure gap time pay. First, we do not believe that 29 C.F.R. part 778, which specifically deals with "Overtime Compensation," and in particular "Subpart B - The Overtime Pay Requirements," which contains section 778.114, are even applicable when there is no overtime compensation at issue. See 29 C.F.R. § 778.1 ("This part 778 constitutes the official interpretation of the Department of Labor with respect to the meaning and the application of the maximum hours and overtime pay requirements

31

contained in section 7 of the Act."). Although the guidance these sections provide for determining situations in which overtime must be paid are instructive, if no overtime was worked during a pay period, these overtime interpretations cannot provide a basis for a straight time claim.

In this case, the officers contend that their salary only compensated them for the 135 regularly scheduled hours whereas the County contends the agreed upon salary compensated the officers for all hours up to the 147 hour threshold. Regardless of which way this contractual dispute is resolved, we see no FLSA violation under either circumstance. Logically, in pay periods without overtime, there can be no violation of section 207 which regulates overtime payment. Further, it is undisputed that all Appellees have been compensated well in excess of the statutory minimum wage for all hours worked; therefore, there can be no violation of section 206. Finding no violation of section 206 and no violation of section 207, we conclude that there can be no violation of the FLSA for failure to pay such pure gap time claims. Although we might agree with the sentiments of the district judge and that of Judge Saffels in Schmitt II that law enforcement officers throughout this nation perform a crucial and often thankless job for woefully inadequate salaries, so too do many people believe that public school teachers, nurses, sanitation department workers and air traffic controllers perform similar demanding and important jobs for likewise inadequate salaries. But, we do not believe a pure gap time remedy can be derived under the auspices of FLSA when such a remedy does not exist under the law. Even though the financial terms of an employee's agreement may not be as lucrative as the employee desires, parties should be free to negotiate those terms without government interference as long as the agreed upon terms do not violate the minimum wage/maximum hour requirements of the FLSA. See Walling, 323 U.S. at 42.

Although one of the County's contentions below was that it was operating in compliance with the fluctuating workweek exemption of section 778.114 and the district court looked to this section in analyzing the officers' straight time claims, we do not agree that this section has any application to straight time claims when no overtime has been worked. Section 778.114 provides for a fluctuating workweek method of overtime compensation in which an employee, with hours that fluc-

32

tuate from week to week, can be paid a salary that serves as compensation for all straight time hours worked during a week whether few or many. 29 C.F.R. § 778.114(a). Utilizing the mathematical payment structure provided under this method of overtime compensation, the more the employee works and the more overtime the employee logs, the less he or she is paid for each additional hour of overtime. See § 778.114(b). Further, because the salary is intended to compensate the employee for all hours worked during the week, the employer is obligated to pay overtime at a rate of only half the employee's regular rate as opposed to one and a half times that rate.§ 778.114(a); see Knight v. Morris, 693 F. Supp. 439, 445 & n.5 (W.D. Va. 1988) (explaining the rationale for paying salaried employees "half time overtime" under § 778.114). Finally, that system of payment requires "a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number . . . . " 29 C.F.R. § 778.114; see Roy v. County of Lexington, S.C., 928 F. Supp. 1406, 1419-20 (D.S.C. 1996) (finding defendant county improperly utilized the fluctuating workweek system of overtime); Burgess , 805 F. Supp. at 347-48 (finding defendant improperly applied the fluctuating workweek method of overtime payment because there was no clear mutual understanding between the employer and employees).

Having looked to this section, the district court took the "clear mutual understanding" test, which an employer must prove to utilize the fluctuating workweek method of overtime payment, and imposed it as a burden on the County with respect to pure gap time claims when there was not any overtime issue. The court stated: "Thus, the crux of the instant matter is whether or not the parties had a clear mutual understanding that an officer's salary is fashioned to compensate all hours worked up to the overtime threshold." Order at 14, J.A. 103. In fact, we see nothing in the regulations, interpretations or the FLSA law that requires an employer to demonstrate that there exists a clear mutual understanding with respect to the number of nonovertime hours for which an employee's salary is designed to compensate if no overtime is worked. That issue is simply one of contract law. Rather, section 778.114 places the burden on the employer to demonstrate the existence of such a clear mutual understanding when the employer attempts to utilize the fluctuating work week method of payment which is an exemption to the strict overtime requirements of

33

the FLSA and which results in the salaried employee receiving half time overtime rather than time and a half overtime. **21**

In addition to erroneously relying on section 778.114, the district court also adopted the reasoning in Lamon I, finding the commentary in the opinion's footnote one to be persuasive. Order at 16-17, J.A. 105-06 (citing Lamon I, 754 F. Supp. at 5121 n.1). The lower court stated:

> This Court agrees with the Lamon [I] court's rationale. Specifically, the Court finds no principled reason to require Plaintiffs to work in excess of 146.6 hours before all straight time hours are compensated, especially where their salary may compensate them for only a 135 hour (or, at times, a 144 hour) regular schedule. Absent a clear bilateral agreement or policy to the contrary, law enforcement officers who have spent time protecting the citizens of their jurisdiction should be compensated for all straight time hours worked whether or not they actually worked overtime.

Order at 17, J.A. at 106 (emphasis added). We obviously agree that employees should be compensated for all hours due them under the terms of their employment agreement. The primary purpose of 29 U.S.C. § 207(k) is to provide a public employer with a partial exemption from the normal requirement that overtime pay is due after a forty hour work week. If the terms of the employment agreement are such that a paycheck compensates the employee for all hours worked up to the overtime threshold, and the employer pays the employee the agreed upon amount, the employee has in fact received straight time pay for all nonovertime hours. If the employee has not worked any overtime and has received an hourly wage equal to or in excess of the statutory minimum wage, there can be no FLSA violation. If the same employee has worked overtime and has been paid properly for all overtime hours worked, then again there has been no FLSA violation.

_____

**21** Although finding this section has no applicability to this case, we further believe that the existence of a clear mutual understanding under § 778.114 can be based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise.

34

Further, we believe the lower court's reliance on Lamon I was misplaced because, as discussed in detail above, Lamon I primarily addressed whether back compensation was due to plaintiffs for meal time which is governed by a specific regulation requiring payment for meal time unless employees are completely relieved of their duties. Id. at 1520-21 (citing 29 C.F.R. § 553.223). The Lamon I court stated: "In looking to the relevant regulatory provisions, the FLSA requires compensation for meal periods, notwithstanding the defendant's adoption of a 28-day work period." Id. at 1521. (emphasis added). We agree with the holding of Lamon I to the extent that meal time is compensable if employees are not completely relieved of their duties. See Johnson, 949 F.2d at 129. However, we disagree with Lamon I, Schmitt I & II and any other authority that implies claims for pure gap time, straight time when no overtime has been worked, are cognizable under the FLSA when the employer has not violated the FLSA's minimum wage/maximum hour provisions.**22** We so hold well aware of the FLSA's broad interpretation and its remedial purposes because we do not think that in light of the legislative history and intent behind the FLSA that even the most liberal interpretation can encompass such claims. See Donovan v. Crisostomo, 689 F.2d 869, 872 &

_____

**22** The district court also cites Thompson v. F. W. Stock & Sons, 93 F. Supp. 213, 216-17 (E.D. Mich.), aff'd, 194 F.2d 493 (6th Cir. 1952), for the proposition that "several courts have held that employees may be compensated, under the FLSA, for straight-time hours worked above their regular schedule despite the fact that no overtime has been worked in a particular period." Order at 9, J.A. 98. However, the Thompson case involved both minimum wage and maximum hour violations by an employer who ran a mill twenty-four hours a day, six days a week. 194 F.2d at 495. In order to comply "on paper" with the mandates of the FLSA, the employer repeatedly made adjustments to the employees' hours and pay rates although the employees ultimately ended up working the same number of hours. Id. at 495. Additionally, like Lamon I, Thompson was also a "meal time" case because the hours for which the employer was required to pay straight time back pay were hours accumulated for lunch periods during which the employees' duties and responsibilities at the mill continued and the court found that the lunch periods were actually periods in which the employees worked. Id. at 496. This 1952 case preceded the meal time regulation, 29 C.F.R. 553.223, enacted to interpret the 1985 amendments to the FLSA. See 29 C.F.R. § 553.2(a) (1995).

35

n.3 (9th Cir. 1982); Mullins, 730 F. Supp. at 672-73. But cf. Lamon, 754 F. Supp. at 1521 n.1.

We believe our interpretation is consistent with not only the remedial purposes and historical intent of the FLSA, but also with a long history of FLSA case law, the current labor regulations and interpretations, and the 1987 DOL Letter Ruling. As noted in Schmitt I & II, there is a considerable body of case law that supports our conclusion, including the 1969 opinion of this Court in Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1198 & n.6 (citing United States v. Klinghoffer, 285 F.2d 487 (2d Cir. 1960)). Schmitt I, 844 F. Supp. at 1457 n.6; Schmitt II, 864 F. Supp. at 1062 n.18. Additionally, we find rather persuasive the recent opinion in Arnold v. Arkansas, 901 F. Supp. 1385 (E.D. Ark. 1995), in which the court held that a pure gap time claim had no basis in federal court because there was no FLSA violation under the circumstances. Similar to the facts at hand, facing the Arnold court were claims for overtime gap time and pure gap time, id. at 1393 n.32, and the plaintiff employees had been properly compensated for all overtime hours. Id. at 1391 & n.36. The court recognized that the "two central themes of the FLSA are its minimum wage and overtime requirements." Id. at 1392. Addressing the pure gap time claim, the Arnold court noted that"the relief afforded an employee aggrieved by a violation of section 206 or 207 is limited to `their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount equal as liquidated damages.'" Id. at 1393 (quoting 29 U.S.C. § 216(b)) (emphasis added). The court went on to note that 29 U.S.C.§ 215 lists the "prohibited acts" under the FLSA to be violations of section 206's minimum wage law, section 207's maximum hours law, section 212's child labor law and section 211(c) pertaining to record keeping requirements and regulations issued regarding apprentices and impaired employees. Id. The court ultimately concluded that "Plaintiffs' claim for straight time pay when no overtime was worked . . . is not a violation of section 207 of the FLSA." Id. at 1394.

As further recognized by Schmitt I & II, we believe the current DOL interpretations of the FLSA are supportive of our position. In fact, we do not believe that section 778.322 could be more supportive of the County's position. Section 778.322 presents an example of an employee, originally hired for a fixed forty-hour workweek at a $200

36

per week salary, whose workweek is later reduced pursuant to an understanding of the parties to thirty-five hours per week, thereby increasing his regular rate from the original $5.00 per hour to $5.71 per hour. Although such an employee is due payment at his regular rate for hours between 35 and 40 when he also works overtime, section 778.322 emphatically states that in weeks in which the employee works no overtime "only the provisions of section 6 of the Act, requiring the payment of not less than the applicable minimum wage for each hour worked, apply so that the employee's right to receive $5.71 is enforceable only under his contract."§ 778.322 (emphasis added). Therefore, for any cycles including gap hours in which no overtime has been worked and the County has paid more than the applicable minimum wage, under 778.322, the officers' claim to gap time compensation is enforceable only under their employment agreement.

Section 778.323, which immediately follows section 778.322, further amplifies the example provided in 778.322. Section 778.323 discusses the effect if a salary is for a "variable workweek" and again highlights the fact that a basic understanding of the terms of an employment agreement is step one in determining any FLSA claim. It states:

> The discussion in the prior section sets forth one result of reducing the workweek from 40 to 35 hours. It is not either the necessary result or the only possible result. As in all cases of employees hired on a salary basis, the regular rate depends in part on the agreement of the parties as to what the salary is intended to compensate. In reducing the customary workweek schedule to 35 hours the parties may agree to change the basis of the employment arrangement by providing that the salary which formerly covered a fixed workweek of 40 hours now covers a variable workweek up to 40 hours. If this is the new agreement, the employee receives $200 for workweeks of varying lengths, such as 35, 36, 38, or 40 hours. His rate thus varies from week to week, but in weeks of 40 hours or over, it is $5 per hour (since the agreement of the parties is that the salary covers up to 40 hours and no more) and his overtime rate, for hours in excess of 40, thus remains $7.50 per hour. Such a salary arrangement presumably contemplates that the salary will be

37

paid in full for any workweek of 40 hours or less. The employee would thus be entitled to his full salary if he worked only 25 or 30 hours. No deductions for hours not worked in short workweeks would be made.

29 C.F.R. § 778.323 (1995) (emphasis added). Under this section, we believe that even if the officers maintain that their hourly work requirement was reduced to 135 hours per cycle, it is very reasonable for the County to simultaneously maintain that, even with such reduction, the express or implied terms of the officers' employment agreements were that the salary compensated them for all hours worked up to 147 in light of the continued acceptance of their paychecks. Additionally, we find that the "variable workweek" contemplated in section 778.323 is entirely different from the "fluctuating workweek" method of overtime payment provided in section 778.114 because as is evident from the example in section 778.323, the variable workweek employee is still being paid time and a half overtime as opposed to the half-time overtime provided in 778.114. As such, section 778.323 does not mention nor require the employer to demonstrate the existence of a "clear mutual understanding" as required under the fluctuating workweek method of payment.

Finally, we find additional support in the 1987 DOL Letter Ruling quoted in Schmitt II above. "While opinion letters are not binding on the courts, they do constitute `a body of experienced and informed judgment' which have been `given considerable and in some cases decisive weight.'" Schultz v. W.R. Harton & Son, Inc., 428 F.2d 186, 191 (4th Cir. 1970) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). The 1987 DOL Letter Ruling specifically addresses circumstances whereby law enforcement employees work an additional five hours during a 28-day cycle in which the officers are regularly scheduled for 160 hours with a corresponding overtime threshold of 171 hours. 1987 DOL Letter Ruling; see 29 C.F.R. § 553.230. It concludes that no violation of the FLSA occurs as long as the officers are paid a total amount that exceeds the minimum wage for the 165 hours worked. The DOL Letter Ruling states:

> [T]he law enforcement employees to whom you refer have been properly compensated under FLSA when, for any work period during which they have worked less than the applica-

38

ble maximum hours standard, they have received at least the minimum wage ($3.35 an hour) for all of their hours worked.

1987 DOL Letter Ruling. As applied to this case, whether the officers' salaries compensated them for a minimum of 135 hours or a maximum of 147 hours, it is undisputed they received at least the minimum wage for all hours worked. Therefore, in accordance with the DOL Letter Ruling, the officers have been properly compensated under the FLSA.

Having looked to the case law, the legislative intent in enacting the FLSA and the current DOL regulations and interpretations, we feel that the greater weight of authority, along with common sense, supports the position that we reach with respect to pure gap time claims. We therefore reverse the ruling of the district court on this issue and instead grant summary judgment for the County.

VII.

In conclusion, although we recognize the importance of the FLSA's broad protections, we believe that freedom of contract between an employer and an employee is one of the precepts of the free market economy upon which this nation was founded. In evaluating a potential straight time claim, the trier of fact must look to the terms of the employment agreement and determine those terms based on the evidence of the implied or express agreement between the parties. That agreement can be determined by a written contract as well as by the everyday employment practices of the parties. As in this case, we do not believe that employees can feign ignorance of employment terms when their actions simultaneously demonstrate otherwise. For there to be an overtime gap time cause of action under the FLSA, a violation of section 206 or 207 of the Act must first exist. If the employee has been properly paid at or above minimum wage for all nonovertime hours under the terms of the employment agreement and at a proper overtime rate for all overtime hours, then the employees must look to contract law for relief concerning any disagreements about the number of hours for which his or her salary was intended to compensate. Simply put, if the terms of the employment agreement do not violate the FLSA, freedom of contract prevails.

Absent a minimum wage/maximum hour violation, we find no remedy under the FLSA for pure gap time claims. Our ruling precludes an employee from invoking the jurisdiction of federal court on a pure gap time claim allegedly under the FLSA when there is no minimum wage/maximum hour violation. We further believe this ruling is consistent with the cautious and guarded invocation of federal jurisdiction. American Fire & Cas. Co. v. Finn , 341 U.S. 6, 17 (1951). Based on our analysis of the record, we believe summary judgment for Plaintiffs was inappropriate. We reverse the judgment of the lower court and grant summary judgment for the County.

REVERSED