UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-2136
(CA-98-209-3)

Robert E. Balducci, et al,

Plaintiffs - Appellants,

versus

Chesterfield County, Virginia,

Defendant - Appellee.

O R D E R

The court amends its opinion filed August 11, 1999, as follows:

On the cover sheet, section 4 -- the first line is corrected to read "Argued: May 4, 1999."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT E. BALDUCCI; PAUL BLOCHER;
KENNETH S. CREWS; MICHAEL G.
HEINTZELMAN; ERIC S.
HOLLINGSHEAD; KENNETH E. JAMES;
BRIAN F. MONAHAN; JOHN P.
MURPHY; MICHAEL S. SCHIPINSKI;

No. 98-2136

JAMES A. VENTI,
Plaintiffs-Appellants,

v.

CHESTERFIELD COUNTY, VIRGINIA,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-98-209-3)

Argued: May 4, 1999

Decided: August 11, 1999

Before ERVIN, TRAXLER, and KING,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Tarcissius Leibig, ZWERDLING, PAUL, LEI-
BIG, KAHN, THOMPSON & WOLLY, P.C., Fairfax, Virginia, for

Appellants. Michael Peter Kozak, Assistant County Attorney, Chesterfield, Virginia, for Appellee. **ON BRIEF:** Carla M. Siegel, ZWERDLING, PAUL, LEIBIG, KAHN, THOMPSON & WOLLY, P.C., Fairfax, Virginia, for Appellants. Steven L. Micas, County Attorney, Jeffrey L. Mincks, Deputy County Attorney, Wendell C. Roberts, Assistant County Attorney, Chesterfield, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiffs, current or former police officers employed by Chesterfield County, Virginia (the "County"), appeal an order of the district court granting the County's motion to dismiss their claim that the County violated the Fair Labor Standards Act ("FLSA" or "Act"), see 29 U.S.C.A. § 201-219 (West 1998), by refusing to pay them straight time compensation for hours they worked between their regularly scheduled hours and the FLSA's overtime threshold, during work cycles in which they also exceeded the overtime threshold. The district court dismissed plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), concluding that the officers failed to state a claim for such "overtime gap time" compensation under the FLSA and that the court lacked subject matter jurisdiction over the number of hours the officers' salaries were intended to cover.[1] We affirm.

_____

[1] In Count II of the Complaint, plaintiff Hollingshead also asserted that the County violated his due process rights when they terminated his employment for leaving his assigned shift to begin an off-duty job. He has not appealed the district court's grant of summary judgment to the County on this count.

2

I.

The FLSA mandates an hourly minimum wage due to all employees, see 29 U.S.C.A. § 206 (West 1998), and generally requires employers to pay their employees one and one-half times their normal hourly rate for all hours worked in excess of a 40-hour week, see 29 U.S.C.A. § 207(a)(1) (West 1998). In order to afford law enforcement and fire protection agencies more flexibility in the scheduling of their employees, however, the FLSA provides a partial exemption for such agencies. See 29 U.S.C.A. § 207(k) (West 1998).

Plaintiffs are law enforcement officers employed by the County, whose work schedules are subject to this partial exemption. Consistent with § 207(k) of the FLSA, the County utilizes 24-day work cycles for the scheduling of its officers, which requires it to pay overtime compensation only if the officers work in excess of 147 hours during a 24-day work cycle. See 29 C.F.R. § 553.230 (1998). The County, however, does not regularly schedule its officers to work 147 hours. Rather, the County regularly schedules its officers to work a total of fifteen 24-day work cycles each year, consisting of fifteen 9-hour shifts (135 hours) in ten work cycles and sixteen 9-hour shifts (144 hours) in five work cycles.

The County pays its officers an annual salary, which is converted to biweekly paychecks in the base amount of 1/26th of the annual salary. The County also pays overtime compensation to the officers for all hours worked in excess of 146.6 hours in a work cycle, at the rate of one and one-half times the officer's regular rate.[2]

In 1995, twelve County police officers brought an action under the FLSA, contending that "because the County regularly scheduled them for 135 hours per cycle, instead of the 147 maximum allowed, their salary only compensated them for those 135 hours and that they [were] therefore due the [straight time] gap compensation" for all hours worked between the 135 regularly scheduled hours and the 147

_____

[2] Although not required by the FLSA, the County also pays the officers overtime compensation for off-duty court appearances, call backs, extra shifts, and special assignments even if the officers have not exceeded the overtime threshold during the applicable work cycle.

3

hour FLSA overtime threshold. <u>Monahan v. County of Chesterfield</u>, 95 F.3d 1263, 1276 (4th Cir. 1996). The County, on the other hand, contended that the officers' salaries were intended to cover all hours worked up to the 147-hour overtime threshold. <u>See id.</u> at 1266. We reversed the district court's decision to hold the County liable under the FLSA for such "overtime gap time" compensation. We held that:

> if the mutually agreed upon terms of an employment agreement do not violate the FLSA's minimum wage/maximum hour mandates and provide compensation for all nonovertime hours up to the overtime threshold, there can be no viable claim for straight gap time under the FLSA if all hours worked above the threshold have been properly compensated at a proper overtime rate.

<u>Id.</u> at 1273. We further concluded that:

> there was more than ample evidence in the record for the court to determine the terms of [p]laintiffs' employment agreements and that those terms as a matter of law did not violate the FLSA. The overwhelming evidence leads to but one conclusion: these officers knew they worked on a salaried basis and knew or should have known that their salary was intended to compensate them for all hours worked up to the overtime threshold.

<u>Id.</u> Accordingly, we held that, because the employment agreements between the officers and the County did not violate the FLSA's minimum wage/maximum hour mandates, there was no viable claim for straight time compensation for hours worked in the gap. <u>See id.</u> at 1276 ("Not only did the County comply with the FLSA's maximum hour mandates, but it also complied with its minimum wage and overtime calculation provisions.").

We also noted our lack of jurisdiction over employment contract disputes brought under the auspices of the FLSA:

> [W]e will also not allow employees merely to grumble about the compensation scheme and then later spring a sur-

4

> prise attack on an employer who has tried to comply with the options that the FLSA provides. Any dispute between these two parties about the number of hours for which the employees' salary was intended to compensate them is not cognizable under the FLSA, but instead should be pursued under state contract law.

Id. at 1279-80 (internal citations and quotation marks omitted) (alteration in original).

Approximately two years after our decision in Monahan, several of the Monahan plaintiffs joined with other officers and brought the current action under the FLSA. As before, plaintiffs seek straight time compensation for all hours worked in the gap in those situations when they also exceed the 147-hour overtime threshold.**3** In an effort to distinguish our decision in Monahan on this identical issue, plaintiffs allege that their overtime gap time claim is now viable because the County unilaterally changed the terms of their employment agreements, after our decision in Monahan, such that their annual salary now only compensates them for their regularly scheduled work hours rather than for all hours worked up to the overtime threshold.

The alleged "change" in the employment agreement consists of the effect of a July 1997 memorandum issued by Major A.V. Maddra of the County police department to all officers (the "Maddra memo"). By scheduling its officers for 9-hour shifts, the County has provided for a one-hour overlap of officers on-duty to ensure continuous police coverage. However, it had become common practice for the outgoing officers to eliminate all or a portion of this last hour of their shift, utilizing the time to instead go home, visit their girlfriends, or start a second job. The Maddra memo ended this practice, reminding the officers that:

_____

**3** In Monahan, the officers had also alleged that compensation was due under the FLSA for "gap hours" even when the 147-hour threshold was not exceeded. We rejected this contention as well, concluding that such "pure gap time" claims are not cognizable under the FLSA because there is no minimum wage or maximum hour violation. Id. at 1280-84. Plaintiffs do not pursue "pure gap time" compensation in this action.

5

[the] one hour overlap of time at the end of the shift . . . allows for coverage on the road while the on-coming shift has roll call and drives to their assigned areas. This overlapping time provides for 24 hours of unbroken coverage. In order for the 9-5 plan [9 hour shifts for 5 days] to work properly, officers must be available to take calls and perform all police duties until the end of their shift. This includes getting all necessary paperwork items completed and turned into supervisors or headquarters. Nine hour shifts mean working nine hours. Any less than that is unacceptable to the department and the public.

J.A. 39.

Plaintiffs interpret the Maddra memo to mean that officers must work the full 135 or 144 hours that they are regularly scheduled to work, unless they take authorized sick, vacation, or administrative leave, and assert that leaving a shift early may now subject them to discipline, termination, or a reduction in pay. Hence, they complain, "[p]laintiffs, who previously were free to leave once their relief arrived to go home or carry out their personal pursuits without suffering a loss in pay, no longer have that freedom." J.A. 14.

Although there is some dispute that an actual reduction in pay, as opposed to disciplinary measures, would be employed should the officers leave their posts prior to the end of their scheduled shifts, we assume that plaintiffs' interpretation of the Maddra memo is correct -- the County requires its police officers to actually work all hours of their regularly-scheduled shifts and does not allow its officers to leave work early without authorization. We reject, however, plaintiffs' assertion that the Maddra memo, which in our view sets forth a work-rule which is neither novel nor unreasonable, has effected a change in their employment relationship with the County so as to render our decision in Monahan inapplicable to the existing complaint, or that the memo otherwise renders the County liable under the FLSA to pay straight time compensation to the officers for all hours worked in the gap.

II.

We review a district court's decision to grant a motion to dismiss de novo. See Flood v. New Hanover County, 125 F.3d 249, 251 (4th

6

Cir. 1997). In doing so, we accept the factual allegations of plaintiffs' complaint as true and construe them in the light most favorable to the plaintiffs. Id. "We may affirm the district court's dismissal only if it appears beyond doubt that the [p]laintiffs can prove no set of facts in support of their claim that would entitle them to relief." Id.

A.

In Monahan, we rejected the County officers' FLSA claim because the employment agreement between the County and its officers itself raised no maximum hour or minimum wage violation. We held that:

> [f]or there to be an overtime gap time cause of action under the FLSA, a violation of section 206 or 207 of the Act must first exist. If the employee has been properly paid at or above minimum wage for all nonovertime hours under the terms of the employment agreement and at a proper overtime rate for all overtime hours, then the employees must look to contract law for relief concerning any disagreements about the number of hours for which his or her salary was intended to compensate. Simply put, if the terms of the employment agreement do not violate the FLSA, freedom of contract prevails.

Id. at 1284. Accordingly, we begin with an examination of plaintiffs' current allegations to determine whether they have now stated a claim for violation of § 206 (the minimum wage provisions) or § 207 (the overtime provisions) of the Act.

The County pays its officers an annual salary that converts to a regular hourly rate well in excess of the statutory minimum wage, a fact which is undisputed by plaintiffs. In addition, plaintiffs acknowledge that the County continues to pay them overtime compensation, at the appropriate rate of one and one-half times their regular hourly rate, for all hours worked above the applicable 147-hour overtime threshold. Accordingly, there is no allegation of a minimum wage violation of § 206 of the FLSA and no claim for unpaid overtime compensation under § 207 of the FLSA. Instead, plaintiffs renew their claim for overtime gap time compensation under the FLSA, alleging that the Maddra memo, by prohibiting them from leaving their assigned shifts

7

before the shifts' end, has changed their employment agreement from one in which the salary is intended to cover <u>all</u> hours worked up to the overtime threshold (as we concluded in <u>Monahan</u>), to one in which the salary is intended to cover <u>only</u> those hours that the County schedules them to work. From this premise, plaintiffs allege that they are entitled to overtime gap time pay under the provisions of 29 C.F.R. § 778.322 (1998). We disagree.

B.

The FLSA regulations contained at 29 C.F.R. § 778.322 and § 778.323 (1998) apply to situations in which there is a reduction in a workweek schedule with no change in the employee's compensation. Entitled "[r]educing the fixed workweek for which a salary is paid," 29 C.F.R. § 778.322 addresses situations in which a workweek is set at less than the maximum 40-hour week. Plaintiffs rely upon that portion of the regulation which provides that:

> [I]n overtime weeks the Administrator has the duty to insure the payment of at least one and one-half times the employee's regular rate of pay for hours worked in excess of 40 and this overtime compensation cannot be said to have been paid until all straight time compensation due the employee under the statute or his employment contract has been paid.

<u>Id.</u> 29 C.F.R. § 778.323, entitled "[e]ffect if salary is for variable workweek," provides that an employer may instead pay its employees a set salary intended to compensate them for all hours up to the maximum hours allowed by the FLSA, regardless of the actual number of hours worked.

Because we found in <u>Monahan</u> that the County officers' salary was intended to cover all hours worked up to the 147-hour overtime threshold, plaintiffs assert that they were employed under a variable workweek arrangement governed by 29 C.F.R. § 778.323 which, in turn, prohibited the prior claim for overtime gap time compensation. Building upon their contention that the Maddra memo changed their employment agreement such that their salary is now only intended to cover their regularly scheduled hours, plaintiffs allege that they are now employed under a "fixed workweek" arrangement governed by

8

29 C.F.R. § 778.322. Consequently, they argue, our decision in Monahan no longer controls their overtime gap time claim and § 778.322 provides a basis for their renewed claim.

While we find plaintiffs' attempt to revive their overtime gap time claim under the regulations creative, we are unpersuaded for a number of reasons. First, in Monahan, we rejected the district court's reliance upon 29 C.F.R. § 778.322 to support payment of "gap time" compensation, finding:

> no evidence . . . indicating that the officers were hired for any fixed hourly "work period" nor . . . any understanding by the parties that the officers' hours were reduced to another "fixed" work period. Although [p]laintiffs were regularly scheduled to work 135 hours during the 24-day cycle, the hours actually worked more often than not varied above and below 135 hours. Because there is no evidence that there was any kind of understanding by the parties to reduce the terms of employment from one fixed hourly amount to another fixed hourly amount, this aspect of the interpretation does not apply.

Id. at 1279 (citation omitted) (footnote omitted). We find nothing in plaintiffs' current complaint, or in the contents of the Maddra memo upon which it relies, that would change our opinion concerning the applicability of this regulation. The Maddra memo informs the officers that, when they are scheduled to be on-duty for 9 hours, they are expected to be on-duty for 9 hours. Assuming the allegations of plaintiffs' complaint to be true, we find nothing within them or within the Maddra memo that would reflect an understanding that the officers' workweek was being reduced from one fixed workweek to another fixed workweek, nor any understanding or intent to alter the terms of the employment agreement we recognized in Monahan.

Second, we reject plaintiffs' contention that our decision in Monahan was dependent upon the fact that the officers at times worked below their regularly scheduled hours. While we noted in Monahan that the County officers worked actual hours above and below those normally scheduled, see id. at 1275, 1279, we in no way rested our Monahan decision upon the fact that the officers at times

9

worked less than 135 hours in a 24-day work cycle. And we certainly did not rest that decision upon an explicit or implicit holding that the County was required to allow its officers to leave their posts early if they wished to avoid the payment of overtime gap time compensation under the FLSA.

On the contrary, we had no difficulty reaching the conclusion that "the [employment] agreement [between the County and its officers] was that the salary compensated the officers for all hours worked up to the threshold," regardless of the actual number of hours worked. Id. at 1278. And we specifically sanctioned the flexible nature of the County's scheduling process:

> The fact that the officers were regularly scheduled for less than the threshold does not indicate that there was any agreement not to compensate them for the gap hours, but instead is more likely indicative of County policy not to schedule them for all hours for which they were already being compensated thereby providing a three to twelve hour buffer per cycle before overtime compensation must be paid. Payment plans that comply with the FLSA, but yet are designed with the flexibility inherent to the law enforcement exemption to explicitly avoid the incurment of overtime hours are not unlawful.

Id. In summary, we find nothing in the language of the FLSA's regulations supporting the allegations in plaintiffs' complaint. The FLSA and its regulations mandate a compensation scheme that complies with the minimum wage and maximum hour provisions, but do not prohibit the County from scheduling its officers for a minimum number of shifts or from requiring its officers to actually work all hours of these assigned shifts.

In the case at hand, the officers have alleged no minimum wage violation and admit that they are being paid overtime compensation at an appropriate overtime rate for all hours they work over the overtime threshold applicable to them. Nor have they stated a viable claim for overtime gap time compensation under 29 C.F.R. § 778.322. So long as there is no minimum wage or maximum hour violation, the County is obviously entitled to require its officers to work their

10

scheduled shifts and to discipline them if they leave their shifts without permission, all without running afoul of the FLSA or its interpretive regulations. Accordingly, we agree that plaintiffs' complaint fails to state a claim under the FLSA and affirm the district court's dismissal of the complaint without prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Additionally, we reiterate that "[a]ny dispute between these two parties about the number of hours for which the employees' salary was intended to compensate them is not cognizable under the FLSA, but instead should be pursued under state contract law." Id. at 1279-80. If plaintiffs wish to pursue their claim that, as a result of the Maddra memo, their salary is now only intended to cover their regularly scheduled hours, they may attempt to do so under state law.

III.

Accordingly, the judgment of the district court dismissing the plaintiffs' complaint is affirmed.

AFFIRMED